WILLIAMS *vs.* HAMILTON.

When it is difficult to determine upon which side the evidence prepon-
derates, the judgment of the Court below, whether granting or refusing
a new trial, will not be disturbed.

Admitting illegal testimony which is wholly immaterial, is no sufficient
ground for a new trial.

Newly discovered evidence, to constitute a good ground for a new trial,
should be material and pertinent to the issue.

Attachment, from Dooly Superior Court.  Tried before
Judge LAMAR, October Term, 1859.

Ashley B. Hamilton instituted his suit by attachment
against the plaintiff in error, Williams, to recover the amount
due upon a promissory note given by the latter for $150 00,
on the 2d day of November, 1857.

The defendant set up in defense, that the note was given
for a horse which the plaintiff, at the time of the trade rep-
resented as sound, but that in fact he was then unsound, and
died in less than two days thereafter with a distress called
the " staggers;" that plaintiff knew at the time the horse
was unsound, and induced defendant to give said note for
him by deceitful representations as to soundness, etc.

In the course of the trial, the defendant proved by Dr.
Young that he was present at the trade, and plaintiff repre-
sented the horse to be sound so far as he knew; witness
thought the horse unsound at the time of the trade; under-
stood he died; thinks he lived about thirty-six hours after
the trade was made; saw plaintiff the next evening after
the trade was made; he said he believed the horse would
die; plaintiff said the horse did have the " staggers " very
bad; from what the plaintiff said and did, the defendant
bought the horse as sound, and agreed to give a sound price;
but from the condition of his hair and difficulty of breath-
ing, witness considered him diseased, and of very little val-
ue; did not hear plaintiff warrant him as sound, but he gave
defendant reason to believe him to be sound from his con-
versation.

Defendant proved by one Williams the above facts in
substance, and, also, that when defendant took possession
of the horse, he was turned into a field where he remained

from about two o'clock in the afternoon until sundown, when witness took him out of the field and fed him; witness then noticed that the horse would not eat or drink; food and water were frequently offered to him and he refused both; never ate or drank from the time defendant bought him until he died, so far as he saw, and he saw him most of the time; he died on the evening of the next day after defendant bought him; plaintiff and defendant had talked about the trade for some weeks before it was made—had not been able to agree on the price; there were peas in the field into which the horse was turned after the trade; the plaintiff, at the time of the trade, reserved the use of the horse to make a trip to Lee county; but afterwards got another from defendant for that purpose, the former being, as he said, a rough riding horse.

In rebuttal, William Hamilton testified, he knew the horse in question; plaintiff told witness that he, plaintiff, was going over into Lee county, and spoke to witness about selling the horse, and asked witness, if he were in plaintiff's place if he would take $150 00 for him, and witness told him he would; this conversation took place eight miles from defendant's house; he was not present at it; the horse usually had a rough coat of hair, and had had a cough, which was supposed to have been the result of distemper.

Elisha Roberts testified, that he was acquainted with the disease in horses known as the staggers; that a horse might have it for a week before it would produce death, and might also die with it in two days; there were two kinds of staggers; if a horse were affected in the right side by one kind, he would turn round on the right side; and if on the left, he would turn round on the left; when affected by the other kind, a horse would look sleepy, hold his head down, and water would run from his eyes; that where several persons are examining a horse with the staggers, it would, in his opinion, be perceptible; he is acquainted with diseases in horses.

There having been a verdict for the plaintiff, defendant moved for a new trial on the following grounds:

1st and 2d. That the verdict was contrary to law and evidence.

3d. That the Court erred in charging the jury: that unless there was a warranty of soundness of the horse for

which the note sued on was given, the defendant must prove that the horse was unsound at the time that plaintiff sold him, and that plaintiff knew of his unsoundness at the time.

4th. That defendant has, since the trial, discovered new, material and important evidence for him in said case, and of which he was ignorant at the trial, and which is shown by the affidavits of Hiram Williams and William Smith.

5th. That the Court erred in allowing to be introduced by the plaintiff as evidence, the sayings of plaintiff as to his going to Lee county, and as to his intention to sell the horse—the defendant not being present.

William Smith states in his affidavit, that some time in the latter part of the summer, or beginning of the fall, of 1857, he saw a large bay horse in the possession of and belonging to plaintiff, which he, Smith, then believed, and still believes, to have been unsound at that time; the attention of said plaintiff was then called to the unsoundness of the horse by the remark of some person in the hearing and presence of plaintiff, that said horse was unsound or diseased, or something to that effect.

Defendant states in his affidavit, that he had no knowledge of what could be proven by said Smith until after the trial.

The Court overruled the motion for a new trial on all the grounds taken, and counsel for defendant excepted.

RODGERS & DEGRAFFENREID, for plaintiff in error.

CLARK, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

We should not have felt constrained to send this case back had the Judge granted a new trial. Neither do we feel forced to reverse him for refusing it. It is difficult to say that the evidence decidedly preponderates on either side.

As to the conversation between the plaintiff and witness, William Hamilton, it should not have been admitted. But it amounts to nothing. The point of it is, that Ashley B. Hamilton, on his way to Lee county when he sold the horse, asked the witness if he would advise him to take $150 00 for the horse, he having been holding him at a higher price. But it is in proof, that previous to this time, Ashley B. Ham-

ilton had been at the house of Williams when he was absent, and stated that he would take $150 00 for the horse, but that he should not come back there to sell him.

Then, as to the newly-discovered evidence. The defense set up to the note is, total failure of consideration, because the horse had died within thirty-six hours after he was sold, of blind staggers. By Smith the defendant will be able to prove that he saw the horse in the latter part of the summer, or beginning of the fall, of the year before he was sold in November. He thought him then unsound, and called the attention of the plaintiff to the fact.

But Smith states nothing as to the nature of the unsoundness. It is admitted that the horse had a cough from distemper. This may have been the unsoundness noticed by Smith and others. To make the evidence pertinent and material, it ought affirmatively to appear that this unsoundness was connected with the disease of which the horse died. There may have been a trick practiced upon Williams. I fear there was. The proof, however, fails to establish it.