## RALEIGH & GASTON RAILROAD CO. *et al. v.* BRADSHAW.

1. Under the rule laid down in *Harris* v. *Central Railroad Co.*, 78 *Ga.* 525, when a petition against two railroad companies charges that the plaintiff's husband was killed, on a designated public crossing, by a passenger-train of the defendants, in consequence of the negligence of the defendants in divers named particulars, an amendment which alleges that, "without reference to whether the deceased was killed on or off the crossing, . . he was visible on the track in the direction from which the train was coming at least 300 yards, and after the danger of the deceased became, or in the exercise of ordinary care should have become, apparent to the defendants' employees in charge of said train, such employees failed to exercise ordinary care, failed to give warning, failed to check or slow up, and thereby were guilty of gross and wanton negligence," does not introduce a new cause of action.
2. Where a juror was excused for providential cause and one of the parties consented that the trial should proceed before the remaining eleven jurors, such party can not complain that, before making such consent, the court had overruled a motion for a mistrial, the right to make such complaint not having been reserved.
3. A witness can not be impeached by proof of contradictory statements without laying the foundation for the same, by calling his attention "with as much certainty as possible to the time, place, person, and circumstances attending the former statement." This rule is not varied where the testimony of the witness was taken by depositions and the alleged contradictory statements made afterwards and before the trial.
4. Admitting immaterial testimony is not necessarily cause for a new trial.
5. The foregoing notes cover all of the questions made in the grounds of the motion for a new trial requiring special mention. The charges complained of, even if not in all respects accurate, contained nothing which could have operated prejudicially to the defendants ; the evidence, though decidedly conflicting, warranted a finding that the plaintiff's husband was killed by a train operated by the defendants, in consequence of the negligence of the employees in charge of the same; and there was no abuse of discretion in refusing to grant a new trial.

Argued May 31,—Decided July 19, 1901.

Action for damages.   Before Judge Calhoun.   City court of Atlanta.   December 20, 1900.

*Erwin & Brown* and *Vasser Woolley*, for plaintiff in error.
*Arnold & Arnold* and *Hamilton Douglas*, contra.

FISH, J.    The plaintiff sued the defendant railroad companies for damages for the tortious homicide of her husband.    The original petition alleged that he was killed while, "in the exercise of due care, [he] was walking over Johns street public crossing, which is a public street crossing in the city of Atlanta;" that "the defendants negligently failed to have a watchman at said crossing, said train was negligently running forty miles per hour, and negligently failed to check and keep checking as said crossing was approached, and negligently failed to keep any lookout ahead, nor did they blow any whistle or ring the bell or give any other signal, and said defendants further violated a valid ordinance of Atlanta, restraining the speed of trains to four miles per hour over crossings." During the trial the plaintiff offered to amend her petition by alleging that, "without reference to whether the deceased was killed on or off the crossing, . . he was visible on the track in the direction from which the train was coming at least 300 yards, and after the danger of the deceased became, or in the exercise of ordinary care should have become, apparent to the defendants' employees in charge of said train, such employees failed to exercise ordinary care, failed to give warning, failed to check or slow up, and thereby were guilty of gross and wanton negligence." The defendants objected to the allowance of this amendment, "on the grounds, first, that it set up a new cause of action; second, that it did not definitely set out the location of the deceased at the time of the homicide, whether on the crossing or off the same; and third, if off the crossing, it set forth no cause of action." The court overruled the objection and allowed the amendment, to which ruling the defendants excepted pendente lite, and error is assigned upon such ruling.    Under the rule laid down by this court in *Harris* v. *Central Railroad Co.*, 78 *Ga.* 525, the amendment did not introduce a new cause of action.    In that case the substance of the original petition, as stated by Chief Justice Bleckley, was, "that the plaintiff's husband was killed by the running of the defendant's train, locomotives, cars, and other machinery; his death was the result of no negligence on his part, but was due to the negligence of the defendant; it was the result of failure by the defendant to use any of the precautions required of railroad companies at public

crossings, and to use reasonable care to prevent injury to passers-by at Pryor street crossing, where he was killed." Substituting the words, "Johns street crossing," for "Pryor street crossing," the language just quoted would accurately state the substance of the original petition in the present case.

The amendment which this court held was properly allowed in the *Harris* case alleged: "The defendant failed to furnish a safe way for egress from the cars, in this: It placed an iron rail around the platform of a car and did not provide steps to another car next to the former, nor proper rails for the protection of persons on the steps. A number of persons were upon the latter car bidding friends good-bye; they were there by permission, express or implied, of the defendant, and were negligently urged by the defendant from the car, and whilst they were getting from it the train started, the conductor not allowing sufficient time for those persons to descend, nor did he stop the train or use any care to prevent an accident, though he saw a crowd endeavoring to get off, and saw that the plaintiff's husband, in climbing off the platform, had fallen between the cars and was hanging to one of the posts of the railing." Surely if that amendment, which so completely changed "the allegations in the declaration touching the specific acts of negligence and the manner of causing death," was permissible, the amendment in the present case, which does not so radically change the original allegations touching these matters, was properly allowed by the trial court. The principle ruled in the case cited is stated in the head-note thereto as follows: "The cause of action alleged being the homicide of plaintiff's husband by means of the defendant's negligence, the allegations in the declaration touching the specific acts of negligence and the manner of causing death may be varied or added to by amendment during the progress of the trial, so as to adapt the pleadings to the evidence in all its aspects." This is what the plaintiff sought to do by the amendment in the case now under review. She alleged, and introduced evidence for the purpose of proving, that her husband was negligently killed on Johns street crossing, in the city of Atlanta, by the running of the defendants' train. The defendants, while denying that their train killed the plaintiff's husband, contended that the evidence showed — and they sought to prove — that he was not killed on the street-crossing, but some distance beyond it. To meet this theory and evidence, the

plaintiff offered the amendment, which, as we have said, under the authority of the case cited, was properly allowed by the trial court.    The second ground of the objection to the allowance of this amendment needs no discussion at our hands, as it has not been argued in this court or specially noticed in the brief of counsel for plaintiffs in error.    The third ground of the objection is clearly without merit, for the amendment, of course, does not stand alone, but is to be considered in connection with the original petition, and the petition, with or without the amendment, set forth a cause of action.

2.  "During the progress of said trial, and after the evidence had been introduced and one argument had from the plaintiff's and defendants' counsel each, and one argument each remaining with an allowance to each of more than one hour, at twelve o'clock, the hour of recess for the day being two o'clock p. m., one of the jurors, O. E. Wingate, privately announced and exhibited to the court a telegram showing that the parent of the juror's wife had died, and that it would be necessary for the said juror to take his wife to Macon, Ga., and to do so [he] would have to leave the city at four o'clock p. m. that day, that his presence with her was necessary for consolation and protection, and that she was feeble and entirely dependent upon him.    Whereupon the defendants moved the court to declare a mistrial, which motion the court overruled and refused to excuse the juror, and the defendants then under the circumstances consented to the discharge of the juror and that the case proceed with eleven jurors."    To the overruling of the motion to declare a mistrial, for the reasons indicated, exceptions pendente lite were filed, and error is assigned upon such ruling.    We think, under the circumstances, the court should have excused the juror for providential cause, and then declared a mistrial, unless counsel voluntarily agreed that the trial should proceed before the eleven remaining jurors.    But the defendants lost the right to except to the action taken by the court, by unconditionally consenting that the juror, Wingate, should be discharged and the trial proceed with the eleven jurors.    By this consent the defendants waived whatever error there may have been in the rulings of the court.    Counsel for the plaintiffs in error cite the case of *Simmons* v. *State*, 88 *Ga.* 272.    The ruling in that case does not sustain the contention that the plaintiffs in error, after unqualifiedly consenting for the trial to

proceed before the eleven jurors, had the right to except to the overruling of the motion to declare a mistrial, made under the circumstances and for the cause indicated. In the case cited the right to except to the order and ruling of the trial court was expressly reserved, for it is stated in the opinion that counsel for the defendants "consented to proceed with the trial before the eleven remaining jurors, provided it was distinctly agreed between such counsel and the solicitor-general, with the sanction of the court, that the defendants would reserve the right to except to the order and ruling of the court, . . and it was then and there so understood and agreed." Here the consent of the defendants that the juror, Wingate, should be discharged and the trial proceed before the eleven remaining jurors appears to have been unconditional, no right to except to the ruling of the court upon the motion to declare a mistrial being reserved.

3. William Robinson testified by deposition for the plaintiff, among other things, that, at the time the plaintiff's husband was killed, he, the witness, worked for the Southern Railway Co. After these depositions were taken, the witness testified in a case brought by himself against the Southern Railway Co., and the defendants in the present case contended that, in the course of this testimony, he testified that he did not work for the Southern Railway Co. on a date which was the same as the date when the plaintiff's husband was killed. The defendants, for the purpose of impeaching the testimony of this witness, offered to prove by the official stenographer what the witness had testified to in his case against the Southern Railway Co. On motion of the plaintiff's counsel this evidence was excluded, upon the ground that no proper foundation had been laid for its introduction. One ground of the motion for a new trial alleged error in this ruling of the court. It is unnecessary to consider the materiality of the rejected evidence for the purpose for which it was offered. The Civil Code, § 5292, which lays down the rule in reference to the introduction of contradictory statements for the purpose of impeaching a witness, provides: "Before contradictory statements can be proved against him (unless they are written statements, made under oath in connection with some judicial proceedings), his mind should be called with as much certainty as possible to the time, place, person, and circumstances attending the former statement; and if in writing, the same should be

shown to him, or read in his hearing, if in existence; and to lay this foundation he may be recalled at any time." It is contended in the motion for a new trial that no grounds for the introduction of this testimony "could have been laid at the taking of said depositions, and the witness at the trial of this case not being in court — and, as movants contend, being out of the State, as appeared from the testimony of the plaintiff in this case,— it was in the interest of justice and truth proper for the court to admit this testimony." We do not think it would have been proper for the court to admit this testimony. The above-quoted section of the Civil Code is clear and explicit; it declares that, "before contradictory statements can be proved against" a witness, the rule which it prescribes for the introduction of such evidence must be complied with; and no exception to this rule is made, either in this or any other section of the code. Plaintiffs in error seek to have this court make an exception to the rule, which will apply to the facts of this particular case. Even if we were to grant that an exception to the rule could be made in a case where it was shown that it was absolutely impossible for the party seeking to introduce the contradictory statements to comply with its requirements, the circumstances upon which the plaintiffs in error rely do not make such a case. It does not appear that the defendants could not have sued out interrogatories for this witness, for the sole purpose of laying the foundation for the introduction of this impeaching testimony. "Where a witness makes statements at variance with his testimony after the taking of his depositions, the only way to take advantage of such statements is to sue out a second commission and lay the requisite foundation for their reception in evidence." 29 Am. & Eng. Enc. L. (1st ed.) 788; Kimball v. Davis, 19 Wend. (N. Y.) 437; Brown v. Kimball, 25 Wend. (N. Y.) 259; Stacy v. Graham, 14 N. Y. 492; Conrad v. Griffey, 16 How. (U. S.) 39. It has been held in other jurisdictions that the impossibility of compliance with the rule requiring the proper foundation to be laid before proof of contradictory statements can be made does not authorize such contradictory statements to be proved without laying the foundation. In Craft v. Commonwealth, 81 Ky. 250, it was held: "Where the testimony of a witness given on a former trial is reproduced, the witness having died, testimony to the effect that the witness, subsequent to the former trial, stated that the evidence given by him on that trial was false, is not compe-

tent." It has also been held, both by the Supreme Court of the United States and the Supreme Court of Ohio, though the decision was not unanimous in either case, that if a witness testifies in a case and subsequently makes contradictory statements, evidence of such statements can not be introduced at a second trial, though the witness is dead, and the party against whom his testimony on the first trial is read has no opportunity of laying a foundation for impeaching him. Mattox *v.* U. S., 156 U. S. 237; Runyan *v.* Price, 15 Ohio St. 1. To the same effect is the decision rendered by the Texas Criminal Court of Appeals, 26 S. W. Rep. 203, in which it was held: "Where a witness testifies on the examining trial, and is cross-examined, and soon becomes insane, his declarations made after giving such testimony are inadmissible on the trial to impeach that testimony then introduced." In the present case the ruling which we make does not go as far as the decisions in these cases ; for, as already indicated, there is nothing to show that it was impossible for the defendants to have laid the requisite foundation for the introduction of the alleged contradictory statements before offering them in evidence.

4. Another ground of the motion for a new trial is : "Because the court erred in admitting, over the objection of these defendants, the testimony of the plaintiff herself, as follows: 'Q. When your husband would go out home, what was his route across the railroad ? Have you ever been with him ? A. I certainly have. Q. What was his route across the railroad ? A. I will tell you exactly the way we go. We go across this field to those tracks there at the railroad, and across the railroad at that crossing ;' meaning Johns street crossing." This evidence was " objected to as hearsay and immaterial." This testimony certainly was not hearsay, and it is not necessary to determine whether it was, or was not, material, because if it was, as alleged, immaterial, then its admission by the court affords no cause for a new trial. "Admitting illegal testimony which is wholly immaterial is no sufficient ground for a new trial." *Williams* v. *Hamilton,* 30 *Ga.* 968. "Neither the rejection nor the admission of immaterial evidence is cause for a new trial." *Thompson* v. *Thompson,* 77 *Ga.* 693. See also *Lindsey* v. *Lindsey,* 14 *Ga.* 657; *Montgomery* v. *Trustees,* 70 *Ga.* 39 (4).

5. We have covered all of the grounds in the motion for a new trial requiring special mention ; other grounds are sufficiently referred to in the headnote. *Judgment affirmed. All the Justices concurring.*