28384.  WILHARBLA REALTY COMPANY *v.* CARRINGTON.

DECIDED MAY 31, 1940.  REHEARING DENIED JULY 9, 1940.

*George & John L. Westmoreland, Spence & Spence,* for plaintiff in error.

*James C. Grizzard, Thomas Howell Scott,* contra.

FELTON, J.  This is the second appearance of this case in this court.  For a full recital of the allegations in the declaration in attachment see *Wilharbla Realty Co.* v. *Carrington,* 60 *Ga. App.* 353 (3 S. E. 785).  Since that decision the declaration in attachment was amended to allege the reasonable value of the services.  The case was tried by a judge of the civil court of Fulton County, without a jury.  He found for the plaintiff, the defendant in error in this court, and overruled the realty company's motion for new trial, to which judgment it excepted.  There are two questions for decision: (1) whether a certain letter was admissible, and (2) whether the evidence authorized a finding that the realty company had listed the property for lease with Carrington.

■ It was not error for the court to refuse to admit in evidence a letter written by Gilbert System Hotels, by H. Gilbert, president and general manager.  The letter enclosed a summons of garnishment in this case directed to Gilbert System Hotels.  It was addressed to Judge William Harmon Black, who is president of the

Wilharbla Realty Company, and contained statements which tended to contradict Gilbert's testimony which had been taken by deposition. The letter was not shown to or read to the witness as required by the Code, § 38-1803. *Raleigh & Gaston R. Co.* v. *Bradshaw*, 113 *Ga.* 862 (39 S. E. 555).

While it is true that an owner of property is bound to pay an *authorized* broker for his services in procuring a lease of property, on the contrary where a broker, without any authority whatever, finds a prospective tenant and induces him to make an offer to lease the property, the owner is not obligated to accept the offer, and may accept from another broker a later less favorable offer, without becoming liable to the broker procuring the first offer, even though the tenant is the same person presented by the first broker. The reason is that an owner owes no duty to a mere volunteer, but does owe the highest kind of good faith to one whom he employs as an agent, one who bears a fiduciary relationship to the owner. Until authority is given there is no agency, and therefore no fiduciary relationship. Under the facts, this case does not fall within the rule of the decisions holding that the agent procuring the sale is entitled to a commission. Those decisions simply hold that a broker who is employed in the first instance is protected from others who seek to profit by his labors. They do not hold that a volunteer who may be the procuring cause of the sale is entitled to a commission when the trade is not closed through him. All the evidence shows in this case is that the Carrington Realty Company, without any contract with the Wilharbla Realty Company, induced a prospective tenant to propose to rent a certain hotel on certain terms. The proposal was forwarded to the president of the Wilharbla Realty Company by one King Stillman, who supervised the hotel but who had no authority to lease it; and it was not accepted by the president of the Wilharbla Realty Company. The proposal was not answered. The proposal was later rejected by the president in person to the broker; and he stated at that time that if anything happened the broker could work further on the matter. Several months later the president of the Wilharbla Realty Company leased the hotel, through another broker, to the customer whom the Carrington Realty Company had interested.

The evidence was undisputed that the Carrington Realty Com-

pany began its efforts to lease the hotel because of a sign placed in a small store in the hotel building, which read as follows: "For rent. See King Stillman, 1215 Citizens & Southern Building [telephone number], or see your own broker." There was no evidence that Judge Black or King Stillman listed the property with the Carrington Realty Company or authorized it to submit lease contracts. King Stillman collected rents on and supervised the property, but both Judge Black and Stillman swore that he had no authority to lease it or list it for lease. King Stillman swore that he never told anybody more than that he would communicate any offer to Judge Black. There was no evidence that King Stillman or Judge Black knew that the Carrington Realty Company had undertaken to lease the property upon the assumption that the sign in the store was its authority for doing so, or that with such knowledge the Wilharbla Realty Company acquiesced in or ratified the efforts. The sign in the store clearly would not authorize the lease of the hotel, when it was not in the hotel proper but in a small store in the same building. One of the Carringtons testified that Judge Black discussed with them the offer they submitted, and turned it down, stating that he was going to operate the hotel himself; and that he told Judge Black that they would be glad to try to work something out "if anything happened." Randolph Carrington testified that King Stillman told him, when Carrington presented the proposed lease, that he (Stillman) did not have authority to do anything except to transmit the letter. Under these facts King Stillman and Judge Black were authorized to assume that the Carrington Realty Company was representing the Gilberts who were offering to lease the hotel, and that in dealing with it they were not obligating their company for commissions or otherwise. Mere proposals would not obligate for commissions, nor would a consideration and refusal of the proposals. Under the evidence the Wilharbla Realty Company was not bound to accept the Gilbert proposal, even if it was the best proposal, and was free to accept another offer, for the reason that there was no contract with the Carrington company binding it to accept an offer proposed by the Carrington company. The proposal by Gilbert through Carrington was purely voluntary on the part of Carrington; and Judge Black's statement that Carrington could work on it in the future was not a ratification of his previous acts. It does not appear that

further work was contemplated until "something happened," and it does not appear that anything happened or that any further work was done by Carrington which contemplated that he was to be paid therefor or that the Wilharbla Realty Company would be expected to pay for. 4 R. C. L. 248.

It was error to overrule the motion, because the evidence did not authorize the finding that the real-estate agency was authorized to procure a lease of the property, or that its efforts to lease it were ratified by the owner. The court erred in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*