THE WESTERN & ATLANTIC RAILROAD CO. *v.* DENMEAD.

1. The evidence upon the main point in the case being conflicting, the jury believing the witnesses for the plaintiff, and the court being satisfied with the verdict, this court will not interfere with the judgment refusing a new trial.

2. The plaintiff had the right to take the testimony of a female witness by interrogatories. If the defendant had desired to have her examined before the court and jury, the judge had power to compel her presence, and doubtless would have done so upon proper application, and the assignment of sufficient reasons for the necessity of her attendance.

May 23, 1889.

New trial. Evidence. Verdict. Witness. Practice in superior court. Before Judge ATKINSON. Cobb superior court. March adjourned term, 1888.

Mrs. Denmead sued the railroad company for $1,000 damages, which she alleged she sustained by reason of the fact that, on the 7th day of September, 1886, her dwelling-house was set fire to and destroyed by sparks negligently thrown from a locomotive engine of defendant.

The testimony for the plaintiff tended to show as follows : The house in question was situated about 30 or 40 feet from the main track of the defendant, this track being on northeast side of the house. The fire originated on the roof of the house at or near its northeast corner, within a few minutes of the time that a passen-

ger-train of defendant went by, between nine and ten
o'clock in the morning. There was only one chimney
to the house, which was in the southwest corner of the
house, and the only fire in the house on the day in ques-
tion was a very little fire in a stove, which was in a
basement room of the house and a pipe from which ran
into the chimney mentioned. A witness for plaintiff
named Hannah James testified that she was living, at
the time of the fire, just across the railroad track from
plaintiff, and was standing where she could see plain-
tiff's house at the time it caught fire; that it caught
from sparks from an engine of defendant; that the
sparks were in large quantities, more than she ever saw
before; that she saw them when they fell on the house,
and the fire caught where the sparks fell; that the
sparks were of unusual size, and were coming in such
unusual quantities and so fast that they attracted her
attention. Witness had often seen trains of defendant
pass over the track before, but never saw before so
many or as large sparks from an engine. The wind
was blowing towards the house from the defendant's
track at the time. This witness also testified that she
reached the house sometime before the fire company got
there and other witnesses, who corroborated her by tes-
tifying to circumstances which indicated that her testi-
mony was true, also testified that they reached the
house or saw the fire before it was reached by the fire-
men. The house was an old one, having been built
about 1851, and had been in possession of plaintiff
about ten years, but it was well-constructed and was a
substantial frame building. There was $400 insurance
on it, which was collected by plaintiff. Various esti-
mates were given by witnesses for the plaintiff as to the
value of the house, ranging from about $700 to $1,000.
Evidence was also introduced by plaintiff tending to
show that it was possible for a spark from a coal-burn-
ing engine to be thrown as far as this house was from

the railroad, and that such a spark might live long enough to set fire to shingles which were dry, as were those on this house; and that if ejected in such quantities and of such size as indicated by the testimony which had been introduced for plaintiff, it would be a proper inference therefrom that the engine by which they were ejected was not in the condition it should have been, if it had been constructed and managed with proper care.

The testimony introduced by the defendant, briefly stated, tended to show in the first place, that the house was not set on fire by the sparks from an engine; in the second place, that if it was, the fire may have been caused by the sparks from an engine of another railroad company, whose track ran parallel with the track of defendant at the point where this house was situated but was not so near the house, defendant's track being between the house and the track of this other railroad company; thirdly, that if the house was set on fire by an engine of defendant, it could not have been avoided by the exercise of proper care on defendant's part. A number of witnesses (most of them members of the fire department of the town of Marietta in which town the house was located) testified, for the defendant, that they reached the house very soon after the fire alarm was given, and that instead of being on the outside of the roof or on top of the roof, the fire seemed to be in the roof and under the shingles, and that in their opinion the fire caught under the roof between the ceiling of the rooms and the shingles. There was also testimony for the defendant that the stove above mentioned was hot and had considerable fire in it at the time it was moved from the burning house. It was shown that the track of the Marietta & North Georgia Railroad Company was only a few feet farther from the house than that of defendant, and that it had a passenger-train which was accustomed to pass the house

v 83-23

just after the passenger-train of defendant was scheduled to pass, about nine o'clock in the morning. It was not shown that the train on the Marietta & North Georgia railroad left at the usual time on the morning in question. A witness for defendant testified that he was acquainted with the general character of Hannah James, and from his knowledge of that character would not feel authorized to believe her on oath; also that he had not much confidence in the negro race generally (Hannah James being a negro), and would not believe any of them except, possibly, one whom he knew. On the question of the character of the construction and management of defendant's engines, the defendant introduced its master-mechanic, who testified, in substance, that at the time of the burning the defendant used for its passenger-trains two kinds of engines, one called an extension front engine, and the other, which was not an extension front, was provided with a good spark-arrester, which was the best possible means of arresting sparks with that style of engine; that the engines used by the defendant were such as were used on other first class roads and were regarded as first class engines; that the defendant's rules required a prompt report to it of any defect which became apparent in engines and immediate repair of them, and that the system used on defendant's road as to repairs to the engines and the care taken of them was the same as that used on other first class roads. This witness explained, at length, the manner in which the engines were constructed, and testified that if an engine threw sparks in large quantities forty or fifty feet from the right of way, that would be an indication that there was something radically wrong with it; that under rules of defendant, a report as to defects found to exist in engines had to be made to the foreman in charge of the round-house, and by him to the foreman in charge of the machine-shop who reported to witness, and that

for some months before and up to the time of this burning and after it, he knew of no report to indicate that the machinery connected with any of defendant's passenger-engines for the purpose of arresting sparks had become defective or out of repair. He also testified that it was the custom of the defendant never to allow its engines to leave Atlanta in bad condition (it being claimed by plaintiff that the engine which set fire to her house was on its way from Atlanta to Chattanooga).

The jury found for plaintiff $500, with interest at 7 per cent. from the date of the burning. Defendant moved for a new trial on the ground that the verdict was contrary to law, to the charge of the court, to evidence, and was without evidence to support it. The motion was overruled, and it excepted.

C. D. PHILLIPS and ENOCH FAW, for plaintiff in error.

CLAY & BLAIR and GEORGE F. GOBER, contra.

SIMMONS, Justice.

Mrs. Denmead sued the railroad company for damages. The jury returned a verdict for the plaintiff, and the defendant made a motion for a new trial upon the sole ground that the verdict was contrary to law and the evidence. The motion was overruled, and the defendant excepted.

1. The only ground argued before us was, that the verdict was contrary to the evidence. The evidence was conflicting upon the main point in the case; and the jury believed the witnesses for the plaintiff. The court was satisfied with the verdict, and we will not interfere with his judgment in refusing to grant a new trial.

2. Complaint was made in the argument of unfairness in the conduct of the case on the part of the plaintiff, because the plaintiff took the evidence of a female colored witness by interrogatories, and brought other females into court by subpoenas and had their testimony

before the jury. It was argued that the colored female witness whose testimony was taken by interrogatories, was of such bad character that if she had been subjected to cross-examination before the court and jury, the jury would not have believed her. She being a female, the plaintiff, under the law, had the right to take her testimony by interrogatories. If the defendant had desired this witness examined before the court and jury, and could have given the court any special reasons therefor, the judge had the power to compel her presence at the court, and doubtless would have done so upon proper application made to him, and sufficient reasons assigned for the necessity of her attendance. *Powell v. Augusta, etc. R. R. Co.,* 77 *Ga.* 192, 198 ; *R. & D. R. R. Co. v. Childress,* 82 *Ga.* 719 ; Code, §206(4).

*Judgment affirmed.*