SUTTLES *v.* SEWELL *et al.*

The legal evidence introduced on the trial being insufficient to warrant the finding of the jury, the court below should have granted a new trial.·

Argued January 27, — Decided February 11, 1903.

Equitable petition.   Before Judge Lumpkin.   Fulton superior court.   June 18, 1902.

*R. B. Blackburn,* for plaintiff.
*C. J. Simmons* and *C. L. Pettigrew,* for defendants.

CANDLER, J.   This case, in one phase or another, has been before this court three times.   See *Gammage* v. *Powell,* 101 *Ga.* 540; *Suttles* v. *Sewell,* 105 *Ga.* 129, and 109 *Ga.* 707.   The facts are fully stated in the opinion of Mr. Presiding Justice Lumpkin, in 109 *Ga.,* and we will not set them out here, except as it may be necessary in passing upon the one question the decision of which . must determine whether or not a new trial should be granted.   It seems clear to us that the verdict of the jury should have·been set aside, unless it can be said that there was legal evidence sufficient to warrant a finding that the plaintiff did not come into a court of equity with clean hands; that she and her brother, Gammage, conspired to delay and prevent a sale of the property by the sheriff, by having Gammage make bids on it, which were not in good faith, when it was first exposed for sale; that on account of this conduct they were themselves responsible for the failure of the sheriff to sell the property to a bona fide bidder at a price more nearly approximating its real value, at a time when other property was being sold and there were many people present; and that therefore the plaintiff was not in a position to invoke the aid of equity to accomplish the delay for which she and her brother conspired.   The evidence on this point was to the effect that Gammage, the brother of the plaintiff, who bid off the property at the first sale, was an unmarried man living in the house with his sis- .

ter; that he "traded around in the stock business," and was for some time employed as a motorman or conductor by an electric street-railway company. He and the plaintiff's husband (who attended the sale to look after her interests) were together in the crowd all during the bidding, and went together to the sheriff's office some time after three o'clock in the afternoon, to see if arrangements could be made for an extension of the time in which they could get up the money to make good the bid. Gammage had brought a suit against Mrs. Powell, the plaintiff in the execution under which the property was sold, as well as against others, growing out of this same transaction, which had not been tried, and he and his sister had agreed to "go halvers" in any recovery that he might make in that suit. This last fact appears from the testimony of the plaintiff on a former trial of this case, and was offered by the defendants on the present trial for purposes of impeachment only; but we think that as it was competent as an admission of the plaintiff, it may be considered as such, for whatever it was worth. What we have here set out is the only legal evidence that was introduced to prove a conspiracy such as was alleged and such as was necessary to justify a charge by the court on that subject and the finding of the jury to that effect.

The defendant Sewell testified to statements made to him by Gammage, several days after the sale, tending to show that there was an understanding between him and the plaintiff that Gammage should bid on the property for the sole purpose of delaying the sale; and he also testified to similar statements made by the plaintiff's husband, which were subsequent to the sale in question; and this evidence was corroborated by the testimony of Mrs. Sewell, the wife of this defendant. The record does not show that any objection was made to the introduction of this evidence, but we are clear that it was inadmissible, and therefore that it had no probative value. There is no better settled principle of law than that after the completion of an enterprise no statement made by one party thereto will be heard to bind another. Nor are such statements admissible to prove the existence of an agreement. A statement by a conspirator after the enterprise is ended is never admissible to connect another with the conspiracy. It is equally true that the statements of an agent as to the duties or the extent of his agency, made after the completion of the work for which

the agency existed, are not admissible to bind the principal. It follows that no conversation of Gammage which tended to show the existence of an agreement between him and the plaintiff was admissible against the latter, when it appeared that the conversation in question was had several days after the sale and that it was not in her presence. Nor were the statements of the plaintiff's husband, also made after the sale, admissible to show an agreement between her and her brother for the latter to bid in the land for the purpose of delay. Although there was no objection to this testimony, it was merely hearsay and was therefore not evidence. It was illegal and inadmissible under any view of the case, and, even if admitted, was of no probative value. *Claflin* v. *Ballance*, 91 *Ga.* 412; *Eastlick* v. *Southern R. Co.*, 116 *Ga.* 48.

Taking the evidence as a whole, it was insufficient to establish any conspiracy to improperly delay the sale. Gammage, Suttles, and Mrs. Suttles, all of whom were corroborated, swore that the land was bid off by Gammage in good faith, with the full intention to comply with his bid; that he had some of the money, and expected another party to furnish him with the remainder necessary to enable him to pay the purchase-price. When the second sale was had, Suttles had left the sheriff's office in an effort to raise additional funds to make up the amount needed by Gammage. It appears that, after the deed was made by the sheriff to Sewell, Gammage did get up the amount of his bid and tender it to the sheriff, but that the attorney for the plaintiff in fi. fa., as a prerequisite to accepting the money tendered and making him a deed, required that he pay a still further sum, for which requirement we have been unable to find any good reason in law or equity. The defendants proved nothing that was inconsistent with the idea that while Gammage and Suttles were acting together at the sale, it was for the sole purpose of making the property bring something like its real value, and that they fully expected Gammage to be able to comply with his bid of $3,605, which we think, under the evidence, was less than market value of the property. Taking into consideration the testimony of all the witnesses, we think that there was not sufficient legal evidence to authorize a finding that the plaintiff and her brother conspired to delay the collection of the debt for which the property was sold. Sewell bought with notice of all the equities in this case, or with knowledge of such

facts as would charge him with notice; and it appears from the record that he is not only in possession of the property, but that under a transfer from the attorney for Mrs. Powell he holds the fi. fa. against the plaintiff, with a credit on it of only $1,300, the amount for which it was bid in at the second sale.

It is hard for the writer to bring himself to the point of agreeing to reverse a judgment on the ground that the verdict is contrary to the evidence, and especially is this so where the trial judge has faithfully reviewed that evidence and put the seal of his approval on the verdict; but in this case it is apparent that the illegal and inadmissible evidence referred to had much to do with the finding of what seems to the writer to be not a true verdict, and for that reason he is constrained to hold that the court below erred in not granting a new trial on the general grounds of the motion.          *Judgment reversed.   By five Justices.*