ESTILL, guardian, *v.* CITIZENS AND SOUTHERN BANK, trustee.

1. The trial court did not err in excluding the evidence offered by the guardian, and set out in the fourth to twenty-fourth grounds of the motion for new trial.
2. The range in time of impeaching testimony rests in the sound discretion of the trial judge.
3. Depositions of a witness, properly taken by the defendants, were not rendered inadmissible because, subsequently to their taking, the witness had appeared in court, been sworn as a witness for the defendants, being thus subjected to a thorough direct and cross-examination, and her testimony had been made a part of the record.
4. In order to impeach a witness by contradictory statements, it is not necessary that he should absolutely deny the declarations made by him; but this may be done when the witness says he does not recollect such statements, if the same be relevant to the issue on trial.
5. It is well settled that a witness can not be sustained by proof of consistent statements, although the latter may have been made under oath on a previous trial of the same case.
6. If at the time of the trial a witness resided beyond the limits of the State, he was inaccessible; and his testimony on the former trial of the case should have been admitted by the court.
   (*a*) Before such testimony is admissible, the party offering it must show that the witness is inaccessible.
   (*b*) The question of the inaccessibility of the witness was one for the determination of the trial court in the exercise of a sound discretion; and we can not say that the trial judge abused his discretion in refusing to admit the testimony of the witness on the former trial under the proof.
7. Before contradictory statements, previously made, can be proved against a witness for the purpose of impeaching him (unless they are written statements made under oath in connection with some judicial proceeding), his mind should be called with as much certainty as possible to the time, place, person, and circumstances attending the former state-

ment; and, if in writing, the same should be shown to him, or read in his hearing if in existence.

(a) This rule is just to the witness and the party calling him, who has rights dependent upon his testimony.

(b) Depositions of a witness previously taken out in a cause can be used to impeach a witness without first laying the foundation.

(c) A witness whose testimony, taken by depositions, is before the jury on a second trial, can not be impeached by his testimony on a former trial, embraced in a brief of such evidence, agreed to by counsel and approved by the court, unless the proper foundation has been laid by calling his attention thereto and affording him an opportunity to explain.

8. A female witness, whose testimony under our statute can be taken by interrogatories, and who can not be compelled to attend court in person under subpœna, is not such an inaccessible witness, in the sense of our law, as would permit her testimony on a former trial to be used; and the trial court did not err in rejecting proof of the former testimony of such witness when offered by the movant.

9. The trial court did not err in refusing to reopen the case for the introduction by the guardian of additional testimony, it not being made to appear that it had been inadvertently overlooked by counsel.

10. The court did not err in charging the jury that " he [meaning Marion W. Estill] can not, by claiming her as his child, alter the status. The will of John Holbrook Estill provides that Marion W. Estill shall have the share of his estate in controversy, with remainder to his children. If he had no children, it was to go to other legatees under the will of the testator. Marion W. Estill could by no act of his own change this will. He can not, by claiming that a child was his, change the will. To receive the property the child must have been his and by him begotten, and no act or claim of Marion W. Estill as to a child not his and not by him begotten can change the status of such child."

11. The court did not err in charging the jury as follows: " Letters of Marion W. Estill containing declarations, and also oral declarations of his, relating to the paternity of the child, Marian Virginia Estill, have been admitted in evidence. These declarations were admitted as evidence only, and to be given only such credit as you see fit to give them in the light of all of the evidence in the case; and if you find from the evidence that they were made for the purpose of being used as evidence, and not as spontaneous expressions, then you should disregard them and give them no credit at all."

No. 2911. June 15, 1922.

Equitable petition. Before Judge Meldrim. Chatham superior court. September 28, 1921.

*Oliver & Oliver,* for plaintiffs in error.

*Robert L. Colding, Lawrence & Abrahams, Adams & Adams,* and *Thomas P. Ravenel,* contra.

Hines, J. This case has been before this court on two former occasions: *Estill* v. *Estill,* 147 *Ga.* 358 (94 S. E. 304); 149 *Ga.*

384 (100 S. E. 365). The nature of this controversy is fully set forth in the above cases. On the two former trials the juries found that Marian Virginia Estill was the child of Marion W. and Elizabeth Pate Estill. On the last trial the jury found that she was not the child of these parents. Her guardian moved for a new trial, which motion was overruled, and error is assigned upon this judgment. It is unnecessary to set out the evidence, as it was conflicting; and would have sustained a verdict either way.

1. The grounds of the motion for new trial, from the fourth to the twenty-fourth inclusive, deal with rulings of the court in excluding evidence offered by the guardian. These grounds are without merit.

2. In the twenty-fifth ground of the motion it is alleged that the court erred in permitting William M. Kidwell, a witness for the defendants, to testify that he knew Elizabeth Pate Estill ten or twelve years ago, that he did not know her general reputation now, as he had only seen her once in ten or twelve years, and that her general reputation at the time he knew her was bad. The objection to the question which elicited this testimony was, that it had "no bearing on the trial of this case," and that it was "irrelevant." This evidence was offered for the purpose of impeachment. "The range in time is subject to a sound discretion to be exercised by the trial judge." *Watkins* v. *State,* 82 *Ga.* 231 (8 S. E. 875, 14 Am. St. R. 155). The trial judge did not abuse his discretion in this matter, so far as range of time was concerned, or otherwise in making this ruling.

After this witness had testified as above, he was asked if he would believe her on oath at that time; and he replied that he did not know, but he did not think he "would that class of women." No objection was urged to the form of this question, nor to the answer thereto; and so we are not called upon to pass upon the propriety of the question or the answer.

3. In the twenty-sixth ground of the motion complaint is made that the court erred, over objection of counsel for the guardian, in permitting the depositions of Madge Long, a witness for the defendants, taken before a commissioner, to be read to the jury, the ground of objection being, that, since the depositions of this witness had been taken, she had appeared in court, been sworn as a witness for the defendants, when she had been subjected to a

thorough direct and cross-examination, and her testimony had been made a part of the record. The witness not being in court, the judge overruled this motion; and we do not think the court erred in this ruling.

4. In the twenty-seventh ground of the amended motion for new trial, the guardian complains of the admission by the court of the testimony given by Ruby Anne Pate on the first trial of this case, the same being offered by the defendants to impeach this witness, who testified as a witness for the guardian. The objection urged to this testimony is, that it is not contradictory of the testimony of the witness on the then trial, she saying that she did not remember whether she testified on the last trial or not in regard to the matter about which she was testifying, and that she did not remember whether it was on the first or second trial. In order to impeach a witness by contradictory statements, it is not necessary that she should absolutely deny the declarations made by her. This may be done when the witness says she does not recollect such statements, if the same be relevant to the issue on trial, *Sealy* v. *State,* 1 *Ga.* 213 (44 Am. D. 641) ; *Waycaster* v. *State,* 136 *Ga.* 95 (2) (70 S. E. 883).

It is urged that the admission of this testimony, without requiring the introduction of the testimony of the witness given on the same subject on the second trial of this case, is unfair both to the witness and to the guardian, as the testimony of this witness on the second trial is the same as the testimony on the trial now under review. It is well settled that a witness can not be sustained by proof of consistent statements. *Queen Ins. Co.* v. *Van Giesen,* 136 *Ga.* 741 (2) (72 S. E. 41) ; *Smith* v. *State,* 7 *Ga. App.* 252 (3) (66 S. E. 556) ; *Fussell* v. *State,* 93 *Ga.* 450 (21 S. E. 97).

5. We come next to consider the twenty-eighth and thirty-first grounds of the amended motion for new trial. Dr. Causey had testified at a previous trial of this case for the guardian; and his testimony was of vital importance in the case of the minor whom she represented. At the time he so testified he was a resident of Savannah. At the time of the last trial he did not reside in that city. Counsel for the guardian of the minor child offered the testimony of Dr. Causey on the former trial, on the ground that he was then an inaccessible witness. Objection was made to

the introduction of this testimony, by counsel for the defendants, on the ground that no foundation had been laid for its introduction. Mr. Oliver, of counsel for the guardian, stated in his place that Dr. Causey had been a practicing physician in the city of Savannah; that he had moved from the city of Savannah; that he had been absent from the city of Savannah, according to counsel's best information, more than thirty days; that the counsel had written him at Lakeland, Fla., where counsel was advised that he lived, that the counsel had received no reply from him, that to the best of his information and belief the doctor was a nonresident of the State of Georgia, that the counsel could not state positively where he was then residing, but, according to the best information the counsel had, he was then at Lakeland, Fla. Mr. H. Mercer Jordan, of counsel for the defendants, testified that he had handled a divorce case for Dr. Causey in Chatham superior court, that the doctor was living with his mother at Jesup, Georgia, where he had a brother in the drug business. On his cross-examination he stated that Dr. Causey was in his office about fifteen days ago, when he came to see him after the divorce case was settled. He was at Lakeland, Fla., when the case was tried. He came back to Jesup, Ga., and came from Jesup to see him in Savannah about fifteen days ago, and went back there. Whether the doctor lived there then or not he did not know. He did not know where he then was. He heard from him about fifteen days ago, when he was in the office of the witness at Savannah, Ga.

Upon this showing the court refused to permit the testimony of the doctor on the former trial to be read to the jury, on the ground that the foundation had not been laid. This ruling is complained of in the twenty-eighth ground of the amended motion for new trial. In the thirty-first ground complaint is made of the refusal of the court to reopen the case, on motion of counsel for the guardian, to introduce this testimony of Dr. Causey. In support of this motion Mr. Oliver, of counsel for the guardian, submitted to the court a letter addressed by his firm to Dr. Causey, Lakeland, Fla., which letter was shown to the court. He stated that this letter had been returned; that he had written twice; that since the evening before he had telephoned to Jesup, Ga., and ascertained, through a telephone man there, that Dr. Causey had been back on a visit to Jesup, that he had left there on the previous

Sunday in his automobile for Jacksonville, Fla., en route to Miami, Fla., where he established his home as a physician at Miami, Fla.; and that a second letter was addressed to Dr. Causey at Lakeland, to which no reply had been received. Upon this showing the court declined to reopen the case for the purpose of permitting the introduction of the former testimony of Dr. Causey. Did the court err in these rulings?

The law is plain that if this witness, at the time of this trial, resided beyond the limits of this State, he was inaccessible; and his testimony on the former trial should have been admitted by the court. Civil Code, § 5773; *Adair* v. *Adair*, 39 *Ga.* 75; *Eagle & Phenix Mfg. Co.* v. *Welch*, 61 *Ga.* 444; *Atlanta &c. Ry. Co.* v. *Gravitt*, 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145); *Owen* v. *Palmour*, 111 *Ga.* 885 (36 S. E. 969); *G., F. & A. Ry. Co.* v. *Bittick*, 142 *Ga.* 191 (82 S. E. 548); *Brown* v. *Matheson*, 142 *Ga.* 396 (83 S. E. 98); *Smith* v. *State*, 147 *Ga.* 689 (95 S. E. 281, 15 A. L. R. 490); *Hunter* v. *State*, 147 *Ga.* 823 (95 S. E. 668); 10 R. C. L. 966, § 143. Before such testimony is admissible, it must be shown that the witness was inaccessible. If a prima facie showing is made, that is sufficient. *Eagle & Phenix Mfg. Co.* v. *Welch*, supra; *Gunn* v. *Wades*, 65 *Ga.* 537; *Ga., Fla. & Ala. Ry. Co.* v. *Bittick*, supra. In the case first cited the witness, who, a month before the trial, had taken passage by rail at Columbus for Mobile, saying he was going to the Black Hills, and had not returned nor been heard from, was deemed by this court inaccessible, so as to render what he testified to on the former trial of the same case competent evidence under section 5773 of the Code. In *Gunn* v. *Wades*, supra, it was shown that the witness upon a former trial had since committed a homicide, had been advised to go off, had not been heard of in several years, and that his wife and sisters either did not know where he was, or would not tell if they did; and this court held that his inaccessibility was reasonably established. In this case the witness had been a practicing physician in the city of Savannah. He had domestic troubles, which sometimes happen even in that lovely city, and which resulted in a divorce suit in Chatham superior court. That suit had been heard only a short time prior to the trial of this case. At that time the witness was in Lakeland, Fla., as was shown by the testimony of his attorney, who represented him in the divorce

proceedings. Whether he was temporarily in Florida or not was not shown. It was not shown that he had taken up his residence in that State. His presence in Florida just a short time before the trial of this case being shown, the law might raise a presumption of its continuance there until the contrary is shown. *Anderson* v. *Blythe,* 54 *Ga.* 507, 508. But it was shown that the witness had been in this State some fifteen days before the trial of this case; and any presumption arising from his former presence in Florida would be removed by proof of his later presence in Georgia.

Disregarding the direct testimony of Mr. Jordan, that he knew the present whereabouts of the witness, and that he was living with his mother at Jesup, Ga., where he had a brother in the drug business, as a mere conclusion of the witness drawn from the facts narrated by him, we put our decision on the other facts brought out in the proof on this subject. Counsel for the guardian did not give the sources and extent of his information as to the whereabouts of this witness. Other than the statement of counsel, made on information and belief, that the witness was at Lakeland, Fla., there was no proof of circumstances tending to show that this witness, at the time of the trial, was a non-resident of this State. Counsel did not state to the court the grounds of his belief. It was not shown that the movant or her counsel had made any efforts to locate this witness, except that her counsel had written to him at Lakeland, Florida. The question of the inaccessibility of this witness was one for determination by the trial court in the exercise of a sound discretion. *Atlanta &c. Ry. Co.* v. *Gravitt,* supra; *Robinson* v. *State,* 128 *Ga.* 254 (57 S. E. 315). A prima facio case of inaccessibility was not shown. *Ga., Fla. & Ala. Ry. Co.* v. *Biltick,* supra. It does not appear how long before the trial counsel for the guardian had learned of the absence of this witness from Savannah. This witness had not been subpœnaed, and there was no motion to postpone or continue. We can not say that the trial judge abused his discretion in deciding this matter against the movant.

Thus stood the case at the end of the day, when the evidence was closed; counsel for both sides announcing that they had no further evidence to offer. On the following morning counsel for the guardian moved the court to reopen the case, and permit the introduction of the evidence of this witness on the former trial,

basing his motion upon information which he had gotten during the recess between the adjournment of the court on the day before and its reconvening. Counsel had telephoned to Jesup, Ga., for the purpose of locating this witness. He stated to the court that he had been informed by the telephone operator at Jesup that this operator had been informed by the mother of the witness that the latter had left Jesup upon the previous Sunday morning for Miami, Fla., where he had arranged to begin the practice of his profession. If the telephone operator had been testifying as to the information, which he got from the mother of the witness as to the whereabouts of the witness, it would not have been hearsay, and would have been competent and admissible. Civil Code, § 5763. But what the telephone operator told counsel was hearsay in the first degree, and what counsel informed the court this operator told him was hearsay in the second degree; and all of this was hearsay and without probative force and value. *Equitable Mortgage Co.* v. *Watson,* 119 *Ga* 280, 283 (46 S. E. 440) ; *Eastlick* v. *Southern Ry. Co.,* 116 *Ga.* 48 (42 S. E. 499) ; *Suttles* v. *Sewell,* 117 *Ga.* 214, 216 (43 S. E. 486).

While it is the duty of the court to admit material evidence to the jury, at any time before the argument before the jury is closed, providing the evidence was not within the knowledge of the party offering to introduce it before, the court is under no duty to grant a motion to reopen the case for the admission of relevant and vital evidence when the foundation for its introduction rests upon hearsay evidence. *Beale* v. *Hall,* 22 *Ga.* 431; *Hook* v. *Stovall,* 26 *Ga.* 704; *Bone* v. *Ingram,* 27 *Ga.* 382; *Evans* v. *Baird,* 44 *Ga.* 645. So the court did not err in refusing to open the case for the introduction of the evidence of this witness on the former trial, upon this newly discovered information which rested upon hearsay.

6. In the twenty-ninth ground it is alleged that the court erred in rejecting certain testimony of Elizabeth Pate Estill, to the effect that she had heard Dr. Stothart, on the former trial, testify that he had written certain letters; and in refusing to permit the introduction of these letters as evidence. This was clearly hearsay evidence; and this ground of the motion is utterly without merit.

7. We now come to deal with the ruling of the court set out in the thirtieth ground of the amended motion for new trial. Madge

Long was one of the star witnesses in this case. Her depositions had been taken by the defendants; and were read in evidence on the last trial of this case. She testified that she gave birth to a child in Savannah on September 9, 1912, at Mrs. Rowell's house; that Mrs. Estill's sister came and took the child away; that she was unable to take the child home, and in her extremity she wanted to have the child adopted; that the child was taken from her on the third day after its birth; that she had not seen it since, that she did not know Mrs. Estill; and that she did not know her sister, but the woman who took the child said she was the sister of Mrs. Estill.

On the former trial of the case this witness testified ore tenus. She swore that she had received certain letters from Dr. Stothart; that she came to Savannah to give testimony in Colonel Goldin's office, because of the statement in these letters,— to keep herself from coming to court, and to keep her disgrace and the family's disgrace as quiet as possible; that the first information she had that a child had been delivered to Mrs. Estill is in one of these letters from Dr. Stothart; that she saw the woman that came and got her child, who did not give her name, and made no statement as to whom the child was to be taken; and that there was not a name called. Mrs. Lampkin, the sister of Mrs. Estill, was brought into court in the presence of this witness, who testified that Mrs. Lampkin was not the woman who took her child away. The testimony of this witness on the former trial was stenographically reported, was embraced in the brief of evidence filed by the defendants when they moved for a new trial, was agreed to by counsel, was approved by the court as correct, and made a part of the record in this cause. It was offered by counsel for the guardian, for the purpose of impeaching Madge Long, and was likewise offered as direct testimony of this witness for the purpose of explaining her testimony which was taken by depositions. Counsel for the defendants objected to the admission of this testimony when offered to impeach this witness, on the ground that the attention of the witness had not been called thereto, and to the person to whom made, or the time, place, and circumstances of its delivery; and it was objected to as direct evidence, on the ground that the witness was not shown to be inaccessible, but on the contrary resided in Liberty county, Georgia, though not in at-

tendance upon the court. The court sustained both objections; and excluded this evidence from the consideration of the jury.

Was the testimony of this witness on the former trial admissible for the purpose of impeaching this witness without the proper foundation being first laid? Was it necessary to call her attention to the statements contained in this brief, and to the person to whom made, and the time, place, and circumstances under which they were made, before the same could be introduced for the purpose of impeaching her?

The Civil Code lays down the general rule on this subject, and the exception thereto. It declares: " A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements can be proved against him (unless they are written statements made under oath in connection with some judicial proceedings), his mind should be called with as much certainty as possible to the time, place, person, and circumstances attending the former statement; and if in writing, the same should be shown to him, or read in his hearing, if in existence." Civil Code, § 5881. The general rule stated in this code section was early recognized by this court, and has been uniformly followed in many cases, some of which we cite. *Sealy* v. *State,* supra; *Johnson* v. *Kinsey,* 7 *Ga.* 428; *Williams* v. *Turner,* 7 *Ga.* 348; *Wright* v. *Hicks,* 15 *Ga.* 160 (4) (60 Am. D. 687); *Floyd* v. *Wallace,* 31 *Ga.* 688; *Matthis* v. *State,* 33 *Ga.* 24; *Williams* v. *Rawlins,* 33 *Ga.* 117; *Wilkinson* v. *Davis,* 34 *Ga.* 549; *Parkerson* v. *Burke,* 59 *Ga.* 100; *Penn* v. *Thurman,* 144 *Ga.* 67 (8) (86 S. E. 233). Impossibility of laying the foundation will not authorize proof of contradictory statements. *Raleigh etc. R. Co.* v. *Bradshaw,* 113 *Ga.* 862, 866 (39 S. E. 555). The reason of the rule is, that, as the direct intent and effect of the proof of the contradictory statements is to impeach the witness, common justice and a sense of fair play require that his attention should be called to the particular time, place, and other circumstances of such statements, so that the witness shall have the opportunity of correcting and explaining his evidence, and of explaining the nature, circumstances, meaning, and design of what he may be proved elsewhere to have said. *Williams* v. *Turner,* 7 *Ga.* 348, 351; *Williams* v. *Chapman,* 7 *Ga.* 467.

This rule has been declared just to the witness and to the party

calling him, who has rights dependent upon his testimony.  *Williams* v. *Chapman,* 7 *Ga.* 467; *Guerry* v. *Brown,* 49 *Ga.* 520.

But we are concerned in this case with the exception to the above general rule.  The code declares that a witness may be impeached by " written statements made under oath in connection with some judicial proceedings " without any foundation being laid therefor.  Civil Code, § 5881.  It is urged by counsel for the guardian, with great earnestness, that when evidence introduced on the former trial has been put into a brief of evidence prepared by adversary counsel, agreed to by counsel for both parties, approved by the court, and thus becomes a part of the record in the cause, a witness can be impeached by such evidence without any foundation being laid therefor.  There is force in the suggestion that what a witness testifies to under oath in a trial is different from ordinary statements made out of court; and that such statements should stand upon the same footing as the written statements of a witness made under oath in connection with some judicial proceeding.  But the testimony of a witness on a former trial does not fall within the exception specified in the code nor in any exception promulgated by this court.  Such testimony is not " written statements made under oath in connection with some judicial proceedings," and does not come within the exception named in the code.  How stand our decisions?  Depositions of a witness previously taken out in a cause can be used to impeach a witness without first laying the foundation.  *Williams* v. *Chapman,* 7 *Ga.* 467; *Bryan* v. *Walton,* 14 *Ga.* 185 (10); *Molyneaux* v. *Collier,* 30 *Ga.* 731, 745; *Smith* v. *Page,* 72 *Ga.* 539.  The depositions here referred to were those taken out by interrogatories, with or without commission, and where the witness subscribed and swore to his answers to the interrogatories propounded.  Civil Code, §§ 5903, 5908.  A witness who testifies by depositions can not be impeached by previous or subsequent contradictory statements, without laying the proper foundation, even though the witness be a non-resident.  *Raleigh etc. R. Co.* v. *Bradshaw,* 113 *Ga.* 862 (supra).

A witness whose testimony, taken by interrogatories, is before the jury in a second trial, can not be impeached by reading extracts from an agreed brief of his evidence given on a former trial, without first calling his attention thereto and affording him an

opportunity to explain. *Taylor* v. *Morgan,* 61 *Ga.* 46; *Reid* v. *State,* 81 *Ga.* 760 (8 S. E. 431); *Ga. R. &c. Co.* v. *Smith,* 85 *Ga.* 530 (1), 533 (11 S. E. 859); *McCalman* v. *State,* 121 *Ga.* 491, 498 (49 S. E. 609). The witness would not be bound by the statements of her testimony in the brief of evidence, it not being shown that it had been read over to or approved by her. *Reid* v. *State,* supra.

We do not mean to say that on the second trial of a case, a brief of evidence agreed upon at the former trial is not admissible for the purpose of impeaching a witness, the proper foundation therefor being first laid. Such a brief, the foundation being laid, would be admissible for such purpose. *Cox* v. *Prater,* 67 *Ga.* 588.

So we reach the conclusion that the court did not err in rejecting the testimony of this witness, embraced in the brief of the evidence introduced on the former trial of this case, no foundation for its introduction having been previously laid. This question is concluded against the movant by the authorities cited above; and her contention is not sustained by the authorities on which she relies.

8. But the testimony of this witness on the former trial was also offered as direct and affirmative testimony. The movant contends that the witness was inaccessible, she being a female, residing in the county of Liberty. The Civil Code, § 5773, declares: " The testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by any one who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." All female witnesses may be examined by interrogatories. Civil Code, § 5886 (4). A female witness is not obliged, as a general rule, to attend court in order to testify. *Powell* v. *Augusta etc. R. Co.,* 77 *Ga.* 192 (3 S. E. 757); *Bennett* v. *Patten,* 148 *Ga.* 66 (95 S. E. 690). The statute permitting the interrogatories of such witnesses to be taken does not exempt them from attendance upon court. *Western etc. R. Co.* v. *Denmead,* 83 *Ga.* 351 (9 S. E. 683). For good reasons shown they may be compelled to attend. While the statute permitting the interrogatories of such witnesses to be taken does not exempt them from attendance upon court, its provisions should

be followed unless it be shown to the court that it is necessary to have their personal attendance. *Augusta etc. R. Co.* v. *Randall,* 85 *Ga.* 297 (11 S. E. 706). Was this witness inaccessible? A witness is inaccessible when, from extreme old age and physical and mental infirmity, he has become incompetent to testify as to facts once within his knowledge or memory, and where it appears that he is likely to remain in that condition. *Central R. &c. Co.* v. *Murray,* 97 *Ga.* 326 (22 S. E. 972).

Where a witness after diligent search can not be found, he is inaccessible within the meaning of this section. *Gunn* v. *Wades,* 65 *Ga.* 537; *Robinson* v. *State,* 128 *Ga.* 254; *Brown* v. *McBride,* 129 *Ga.* 92 (58 S. E. 702). A witness on the former trial who has since become insane, is inaccessible. Stout *v.* Cook, 47 Ill. 530; Howard *v.* Patrick, 38 Mich. 795; Whitaker *v.* March, 62 N. H. 477; Benney *v.* Michell, 34 N. J. L. 337; Drayton *v.* Wells, 1 Nott & McC. 409 (1 Am. D. 718). This is true if the insane witness is a party to the suit. Wafer *v.* Hemken, 9 Rob. (La.) 203. If the witness is too ill to attend court, he is inaccessible. Wafer *v.* Hemken, 9 Rob. (La.) 203; Howard *v.* Patrick, 38 Mich. 795; Morehouse *v.* Morehouse, 41 Hun, 146; Perrin *v.* Wells, 155 Pa. 299 (26 Atl. 543). Under our statute providing for the taking of interrogatories of female witnesses, and in view of our statute providing for the taking of the depositions of witnesses, we can not say that female witnesses stand upon the same footing as dead, non-resident, sick, or insane witnesses, and that they are inaccessible within the meaning of our law. The movant could have sued out interrogatories for this witness or have taken her depositions. In fact her counsel made some effort to take her depositions.

In the record there is an affidavit of this witness, in which she states that she was not present on the last trial of this case because she was physically unable to attend the trial, on account of trouble with her heart and nerves, and that for the same reason she was physically unable to have had her testimony taken by depositions. As these facts were not shown to the court at the time he ruled on the admission of this evidence, they do not affect his ruling. They do not excuse the movant for not using due diligence in securing or attempting to secure the testimony of this witness for use on the trial of this case, and, if she could not

attend on account of sickness, being prepared to make such showing for a continuance, or for the introduction of her former testimony. The mere fact that the testimony of this witness had been given on the former trial of this case furnishes no ground for its admission on the last trial. The witness must have been produced under such circumstances, just as much as one testifying de novo. *Savannah etc. R. Co.* v. *Flannagan,* 82 *Ga.* 579 (9 S. E. 471, 14 Am. St. R. 183).

9. In the thirty-second ground it is complained that the court erred in not reopening the case for the purpose of permitting Joseph M. Broderick to testify to the good character of Mrs. Estill. In the thirty-third ground it is urged that the court erred in refusing to reopen the case to permit Mrs. Estill to testify who was the father of the child for whom an abortion was performed on October 17, 1901. In the thirty-fourth ground it is complained that the court erred in refusing to reopen the case for the purpose of interrogating Mrs. Elizabeth Pate Estill with reference to trouble with Dr. White. There is no merit in these grounds of the motion for new trial.

10. In the thirty-fifth ground it is alleged that the court erred in charging the jury as follows: " He cannot, by claiming her as his child, alter the status. The will of John Holbrook Estill provides that Marion W. Estill shall have the share of his estate in controversy, with remainder to his children. If he had no children, it was to go to the other legatees under the will of the testator. Marion W. Estill could by no act of his own change this will. He can not, by claiming that a child was his, change the will. To receive the property the child must have been his and by him begotten, and no act or claim of Marion W. Estill as to a child not his and not by him begotten can change the status of such child." It is urged that this charge is erroneous, because it is argumentative, and because it contains expressions of opinion of the court upon the evidence. This instruction is not argumentative. Nor does the language, " To receive the property the child must have been his and by him begotten, and no act or claim of Marion W. Estill as to a child not his and not by him begotten can change the status of such child," intimate or express any opinion upon the facts of the case.

11. In the thirty-sixth ground movant complains of the fol-

lowing charge of the court: "Letters of Marion W. Estill containing declarations, and also oral declarations of his relating to the paternity of the child, Marian Virginia Estill, have been admitted in evidence. These declarations were admitted as evidence only, and to be given only such credit as you see fit to give them in the light of all of the evidence in the case; and if you find from the evidence that they were made for the purpose of being used as evidence, and not as spontaneous expressions, then you should disregard them and give them no credit at all." It is alleged that this charge is erroneous, (1) because it was confusing and misleading; (2) because the expression, "were admitted as evidence only," without proper explanation, entirely discredited and cast suspicion upon the letters and declarations; and (3) because the expression, "if you find from the evidence that they were made for the purpose of being used as evidence, and not as spontaneous expressions, then you should disregard them and give them no credit at all," was erroneous, because (*a*) there was no evidence on which to base this charge, (*b*) because the language, "you should disregard them and give them no credit at all," should have been qualified by the further statement that the jury should credit them if they found the declarations and expressions were true statements of fact, and (*c*) the language of the court entirely discredits the letters and oral declarations, although the jury may have found that they were in fact bona fide and truthful expressions and declarations.

This instruction does not seem subject to the infirmities alleged against it. The court instructed the jury that the letters and oral declarations of Marion W. Estill as to the paternity of the child were admitted as evidence only. This instruction was correct. He further instructed the jury that these declarations were to be given only such credit as the jury saw fit to give them in the light of all the evidence in the case. The weight to be given to evidence is always a matter for the jury. The court further instructed the jury that if they found that these declarations were made for the purpose of being used as evidence, and not as spontaneous expressions, then the jury should disregard them and give them no credit at all. It is alleged that this instruction is erroneous because there was no evidence upon which to base the same. There were sufficient facts and circumstances in evidence to sup-

port this instruction. The failure of the court to further instruct the jury that they should credit these letters and declarations if they found them to be true does not make this instruction erroneous, if otherwise a true statement of the law. It is further urged that the above expression in this instruction entirely discredited these letters and oral declarations, although the jury might have found that they were bona fide and truthful. The court instructed the jury that if they found that they were made for the purpose of being used as evidence, and not as spontaneous expressions, then they should discredit them. If these letters and declarations were made for the purpose of manufacturing evidence, and for the purpose of palming off as his the child of another person, then they could not be bona fide and truthfully made, and the jury should not give them weight and credit. This was the purpose of this instruction. The court did not instruct the jury that they should disregard them entirely; but charged that they should only cast them aside in the event they found that they were not free and spontaneous expressions, but manufactured for the purpose of enabling one to take as his child property given by his father to him for life and at his death to go to other legatees if he died without child or children. We do not think that the jury was misled by this instruction into believing that the presiding judge intended to disparage these letters and declarations in their eyes.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified.*