JAMES FISH, plaintiff in error, vs. JACOB A. VAN WINKLE, defendant in error.

[1.] The jury may *consider* the evidence of an impeached witness. This proposition is correct law of itself, and is certainly so when limited with the proviso that the evidence be in harmony with truth, and corroborated by other testimony.

[2.] A charge that an offer of rescission is not too late if made within a reasonable time, and that the intervening occurrences may be considered on that question, is as favorable to the party moving for the rescission as he has a right to ask.

[3.] So, also, is a charge that a trade induced by untrue representations would be vitiated whether the statements were believed to be true or not when they were made.

[4.] When no motion for a new trial has been made in the Court below, this Court will not pass upon the questions of whether the verdict was contrary to evidence, or the weight of evidence, or to the charge of the Court.

Statutory Proceeding against Tenant Holding Over. Tried in Richmond Superior Court. Before Judge HOOK. April Term, 1866.

Van Winkle proceeded against Fish, under § 3983, etc., of the Code, to expel him from certain premises as a tenant holding over. Fish filed a counter affidavit denying that he held the premises under Van Winkle, and alleging that he held them as his own right and property in fee simple, and

that any claim or title Van Winkle had, or pretended to have, was obtained through fraud, and was consequently void.

At the trial, it appeared in evidence that, in January, 1865, Fish conveyed the premises to Van Winkle by deed, in consideration of some real estate in Newnan and fifty thousand dollars in Confederate money. Fish, at that time, resided on the premises; and after the sale, he rented them of Van Winkle until January 1st, 1866. It was after this date, and after a demand upon Fish for the possession, that Van Winkle commenced this proceeding.

The contract was made in Augusta, and Fish, it would seem, had never seen the property in Newnan which he received in part payment for his own. That property was, at the time, in a damaged condition; and the question before the jury was, whether, by concealment or misrepresentation of its condition, a fraud was practiced upon Fish by Van Winkle or his agent. Another question was, whether Fish had repudiated the contract in due time after discovering the alleged fraud.

There was evidence tending to illustrate both these points, and other evidence impeaching one of Van Winkle's witnesses on the ground of general bad character.

The Court, at the request of counsel for Fish, charged the jury that fraud vitiates all contracts, at law as well as equity; that misrepresentations made wilfully to deceive, either by Van Winkle or any other person, by his knowledge and consent, and which induced Fish to make the trade, are a fraud that vitiates the whole transaction; and that, in considering this case, all the testimony unimpeached—facts and circumstances—will be considered, and if the jury believe that a fraud, positive or constructive, has been practiced upon Fish, the verdict must be for the defendant.

The cousel for Fish requested further charges, as follows:

1. "That if the jury believe the Newnan property was greatly damaged, and Van Winkle did not give Fish this information, and Fish believed the place was in good order in making the trade, it was a fraud on Fish, and avoids the

contract." The Court, after reading the request to the jury, said to them, that this was not so, unless Van Winkle knew of the damage, and concealed the fact to induce the trade; but if the trade was induced by untrue statements of the good condition of the property, made by Van Winkle or another for him, the sale would be vitiated, even though the statements were believed to be true when made—that this would be legal fraud, etc.

2. "That no particular period of time, in case of fraud in a contract, is required for the injured party to seek to rescind the contract, unless the long lapse of time after the fact comes to the knowledge of the injured party makes it unreasonable." The Court told the jury that if this request meant what he supposed it was inteded to mean, it was given as requested; and then added, "that the law contemplates prompt action upon the discovery of the fraud; still, if there should be any intervening causes or circumstances preventing prompt action, it would be right for the jury to look to these in determining the motives and reasonableness of the delay."

3. "That the testimony of a witness impeached cannot be considered by the jury." The Court, upon this request, told the jury, "that while it was true that they might, if they thought proper, disregard the testimony of an impeached witness, it was also true that they might consider his evidence, if, from a view of the whole case, they regarded his testimony as in harmony with the truth of the case, and corroborated by the evidence of other witnesses in whom they did believe."

The jury having found the issue in favor of Van Winkle, Fish, without moving in the Court below for a new trial, brought his bill of exceptions, alleging that the Court erred in not charging as requested, and that the verdict was contrary to law, contrary to evidence, contrary to the preponderence of evidence, and contrary to the charge of the Court.

J. C. & C. SNEAD AND LALLERSTEDT, for plaintiff in error.

STARNES & JOHNSON, for defendant.

Orr vs. The State.

LUMPKIN, C. J.

Upon what ground can this writ of error be sustained?

The charges given by the Court are quite as favorable as the plaintiff could ask. Indeed, some of them verge on the very extreme boundary of legal propriety : so much so, that had the verdict been the other way, we should have found much more difficulty in sustaining the judgment.

Then, as to the verdict being contrary to evidence, and the preponderance of the testimony, and against the charge of the Court,—what have we to do with this? The Court below, not being asked to review these questions on a motion for a new trial, has pronounced no decision. Of course we will not. The Superior Courts, be it remembered, are vested with original jurisdiction—we of appellate only. In any view of the facts of this case, we are not disposed to disturb the finding. It may be that the fifty thousand dollars in Confederate money, received in payment for the exchange of places in Augusta and Newnan, had something to do with this litigation, though it cannot affect the law of the case.

Judgment affirmed.