## DUNCAN *v.* THE STATE.

1. The testimony of a witness attacked by proof of general bad character, though not specifically corroborated, should not be wholly disregarded by the jury, if, from the deportment of the witness on the stand, or the probability of the truth of what he states, when considered in connection with all the evidence in the case, they feel justified in believing him without such corroboration.

2. A jury is not constrained to discard all of the testimony of even a corrupt witness, when he is satisfactorily corroborated on material points by circumstances, or by other unimpeached evidence.    This is so, although the corroboration may not extend to the main, or vitally controlling, issue in the case.

3. The charge, as a whole, correctly instructed the jury as to the methods and effect of impeaching witnesses, and was not erroneous, objectionable or misleading for the reasons, or upon the grounds, set forth in the motion for a new trial.

4. If the rulings of the court in rejecting evidence, or in any other respect, were not entirely accurate and correct, there was in them no material error, nor aught which in any probability affected the result of the trial; there was sufficient evidence, if credible, to warrant a finding that the crime of rape was committed, and some evidence which, if also credible, authorized the conclusion that the accused was the guilty party.

5. The grounds of the motion for a new trial, whether taken separately or collectively, afford no legal reason which would justify the Supreme Court, though by no means satisfied with the verdict, in setting it aside after its approval by the trial judge, especially as this is the second conviction of the accused in this case.

October 5, 1895.

Indictment for rape.    Before Judge Beck.    Fulton superior court.    March term, 1895.

*Glenn & Rountree,* for plaintiff in error.

*J. M. Terrell, attorney-general,* and *C. D. Hill, solicitor-general,* contra.

LUMPKIN, Justice.

This case was before this court at the October term, 1894, when a new trial was granted for reasons then stated in the synopsis of the points decided. 95 *Ga.* 477. Upon a second trial, the accused was again convicted and sentenced to be executed, and the case comes here once more for review.

1. Error was assigned upon the following charge of the court: "If the witness has been so impeached, still the testimony of that witness ought not to be wholly disregarded by you, if you feel justified from his or her deportment on the stand, or the probability of his or her testimony, in believing it even if it receives no other corroboration." By the use of the term "so impeached," the court evidently referred to an attack which had been made upon the credibility of a witness by proof of general bad character. It is not unusual to use the expression that a witness has been *impeached*, when testimony has been introduced to the effect that the general character of such witness is bad and that he is unworthy of belief; but strictly speaking, testimony of this kind is not necessarily an impeachment of the witness, for, after all, it is a question for the jury to determine what weight should be given to the impeaching testimony. If a dozen or more witnesses should swear with reference to another witness who, in point of fact, was a person of great probity and truthfulness, that his character was bad and that they would not believe him on his oath, the jury might well believe that the testimony of the many witnesses was itself false and unworthy of credit; and if they so believed, they would be warranted in crediting the one witness, notwithstanding the attack made upon him. It is therefore more accurate, where one or more witnesses testify that another witness is of bad character, and therefore not to be believed, to say that the credibility of the latter has been attacked, or that an *effort* to impeach him has been made, rather than to say flatly that he has been

*impeached.* The court would not be authorized to tell the jury in plain terms that any witness had been impeached, in the sense that he had been successfully discredited.

We think the charge complained of was intended merely to instruct the jury, in effect, that where an effort had been made to impeach a witness by proof of general bad character, they were not absolutely bound to wholly disregard the testimony of that witness; and we are satisfied the jury must have understood this to be the meaning of the judge, and accordingly, must have received the idea that they were left free to pass upon the question whether or not the effort at impeachment had been successful. Indeed, in other portions of the charge, the court gave to the jury the following explicit instructions: "Whether any witness in this case has been impeached, and, if so, how far impeached; if impeached, how far that ·witness has been sustained (if sustained at all) by corroborating circumstances or credible evidence, are all questions for you, and you alone, to determine." "Whether any witness has been impeached or not, is for you to decide." And again: "After all, gentlemen, it comes back to the broad proposition that the jury are the sole judges of the facts and the degree of credence to be given each witness."

2. Another charge complained of was in the following words: "But the maxim, false in one thing, false in all, is not to be understood as constraining a jury to discard all of the testimony, even of a corrupt witness, when he is satisfactorily corroborated on material points by circumstances or by other evidence unimpeached."

It is certainly possible for even a corrupt witness to tell the truth. Indeed, one may be convicted of a felony involving moral turpitude upon the testimony of an accomplice, if that testimony is corroborated by other evidence connecting the accused with the perpetration of the offence. That is to say, the testimony of the accomplice, though confessedly a corrupt person, may, in the opinion of the jury, count for something in arriving at the

truth of the issue. We therefore think the court was not in error in giving the above quoted instruction. Nor was it necessary that the corroboration referred to should extend to the main or vitally controlling question, if it was on material points involved in the solution of that question.

3. There were several exceptions to instructions given to the jury in reference to the methods and effect of impeaching witnesses. We have already quoted portions of the charge bearing upon this subject, and there are others upon the same line. In the main, the instructions given upon this branch of the case were accurate and correct, and no new or specially important question of law being raised in this connection, we deem a further discussion of the subject unnecessary.

4. The motion for a new trial presents a number of questions of minor importance, predicated upon rulings of the court in rejecting evidence, etc. It would be tedious and unprofitable to set forth and discuss these questions in detail. They involve nothing of serious consequence or which, in any probability, affected the result of the trial; and moreover, after a careful examination and consideration of them, we do not find that any material error was committed. The truth is, the case turned almost entirely upon the credibility of the woman who swore that the accused had committed the crime of rape upon her. If she was worthy of belief, the conviction was right; if otherwise, it was wrong. The fate of the accused, therefore, depended mainly, if not entirely, upon the view entertained by the jury as to the credit which should be given to this witness. The small points to which we have above alluded could have had little or nothing to do with the solution by the jury of the great and controlling issue they were called upon to decide; and in dealing with them, we have reached the conclusion that they are of little consequence in enabling us to determine whether the judgment below should be affirmed or reversed.

5. Indeed, upon a full, anxious and careful consideration of all the grounds of the motion for a new trial, whether taken separately or collectively, we find nothing which affords us a legal reason for setting the verdict aside. As is well known, under our system of administering justice, jurors are the triors of all questions purely of fact, and the exclusive judges of the credibility of witnesses. We have no right or authority, after a verdict has been approved by the trial judge, to set it aside because the jury believed a witness whose testimony would not have carried conviction to our minds, had we been sitting in their places. In view of the rule just stated, we do not feel justified in saying that the jury ought not to have accepted as true the testimony of the woman that she was raped by the accused. But the verdict is by no means satisfactory to us. This woman's testimony was self-contradictory, inconsistent with some of the recognized principles of human nature, in many respects improbable, and was met by much testimony of an impeaching character. On the whole, we feel that, upon the merits of the case, there ought to have been an acquittal. So much impressed were we with this view, that we came very near ordering a new trial upon the sole ground that the verdict was not sufficiently supported by the evidence. At last, however, we reluctantly concluded that this would be going beyond all precedent, and usurping to ourselves a function not conferred upon us by law. It is also true that the fact that this was the second conviction of the accused had some weight in the painful deliberations which characterized our dealings with this case. We therefore affirm the judgment, but in so doing, ourselves entertain the most serious misgivings as to the correctness of the jury's finding.    *Judgment affirmed.*

After the final decision of this case by the Supreme Court, the Governor of the State, in view of the doubts expressed in the foregoing opinion, and of other facts brought to his attention, the tendency of which was to throw still greater doubt upon the character and credibility of the prosecutrix, granted to the accused a full pardon and ordered his discharge from custody.