## ROBINSON *v.* THE STATE.

1. Proof of inability to find a witness after diligent search may, in some circumstances, be sufficient to establish that such witness is inaccessible, within the meaning of the Penal Code § 1001, and be a sufficient reason for allowing the testimony of such witness, rendered on a former trial, to be read, at the instance of the accused, in a criminal case. The sufficiency of the search is a matter left to the discretion of the trial judge, whose judgment will not be reversed, unless a manifest abuse of discretion appears. In the present case no such abuse of discretion has been made to appear.

2. The charge of the judge, when taken in its entirety, fairly submitted to the jury all of the material issues in the case; and the extracts upon which error is assigned do not contain any instruction which would be calculated to mislead the jury or prejudice the accused.

3. The accused, while making his statement, was about to refer to a matter of which he had knowledge only from hearsay, and was interrupted by

the judge with an admonition that he must state that only which he knew of his own knowledge. In a few moments, before the accused had left the stand, the judge withdrew the admonition and told the accused that he could state any matter that he desired; and the accused proceeded with his statement, and referred to a matter of which he knew nothing except from hearsay, and which was apparently the matter about to be referred to when the judge interrupted him. *Held,* that the interruption of the judge in the first instance furnishes no sufficient reason for reversing the judgment refusing to grant a new trial.

4. The opinion of a witness is not admissible in evidence when all of the facts and circumstances are capable of being clearly detailed and described so that the jurors may be able readily to form correct conclusions therefrom.

5. A verdict in a criminal case is not vitiated by the fact that it is received in the absence of the clerk, when the judge, the solicitor-general, the accused, and his counsel are all present at the time when the verdict is received and published.

6. The evidence authorized the verdict, and no sufficient reason appears for reversing the judgment.

Argued April 15,—Decided May 14, 1907.

Indictment for murder. Before Judge Worrill. Early superior court. February 22, 1907.

*H. M. Calhoun, L. L. Lyon,* and *J. R. Pottle,* for plaintiff in error.

*John C. Hart, attorney-general, J. A. Laing, solicitor-general,* and *Arnold & Arnold,* contra.

COBB, P. J. The accused was tried for the offense of murder and convicted. He excepts to the judgment overruling his motion for a new trial.

1. Error is assigned upon the refusal of the judge to admit the testimony of a witness who was sworn and examined at the committing trial; such testimony being offered on the ground that the witness was inaccessible. The code declares: "The testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by any one who heard it, and who professes to remember the substance of the entire testimony, as to the particular matter about which he testifies." Penal Code, §1001. In *Pittman* v. *State,* 92 *Ga.* 480, it was held that the death of a witness, sworn on a former trial, would authorize the reading of his testimony in behalf of the State on a subsequent trial; but that the removal of the witness from the State, and the consequent inability to procure his attendance, the accused doing nothing to prevent his attendance, will not,

the witness being still alive, render such testimony admissible. The reason at the foundation of this ruling is the recognition of the constitutional right of the accused to be confronted with the witnesses. This right may be waived by the accused, and, therefore, when the witness whose testimony it is sought to read was a witness in behalf of the accused, the testimony would be admissible even though the witness be still living. It is to be noted that the code section above cited does not make the admission of the testimony dependent upon the witness being beyond the jurisdiction of the court, that is, beyond the limits of the State. He must be inaccessible; and the question arises, therefore, whether, within the meaning of this section, a witness who is within the limits of the State is inaccessible.

It was said in an English decision, in 1623, "If a party can not find a witness, then he is as it were dead unto him," and his former testimony may be read, "so as the party make oath that he did his endeavor to find his witness, but that he could not see him nor hear of him." Godbolt, 323. In 1685, in Oates' trial, the same principle was recognized. 10 Howell's St. Tr. 1227, 1285. Mr. Greenleaf, after stating that the absence of the witness from the jurisdiction would be a sufficient reason for allowing his testimony on a former trial read, says, "Inability to find the witness is an equally sufficient reason for non-production, by the better opinion, though there are contrary precedents; the sufficiency of the search is usually and properly left to the trial court's discretion." 1 Gr. Ev. (16th ed.) 284. See also 2 Wig. Ev. §1405; 16 Cyc. 1096 et seq. While a witness beyond the limits of the State is inaccessible, it is not absolutely necessary to show such to be the fact, in order to make the rule laid down in the code section above referred to applicable in a particular case. As has been seen, the witness may be inaccessible even though he be within the limits of the State, that is, within the jurisdiction of the court. Whether he is so inaccessible depends upon the diligence shown by the party seeking to use his testimony on a former trial in ascertaining where the witness is and in attempting to bring him into court. Whether such diligence has been shown as to authorize the admission of his testimony on a former trial is a question addressed to the discretion of the trial judge; and the same rule will be applied to the decision of the question of diligence in a particular case as is applied to

decisions of other matters involving the, exercise of discretion.  The judgment will not be reversed unless a manifest abuse of discretion appears.

The evidence on the question of diligence, taken most favorably for the accused, shows that during the latter part of the week before the case was set for trial, the accused sent an officer to an adjoining county to look for the absent witness at the place where he was supposed to be at work, a few miles from the State line. When the officer approached, the witness fled.  It was not shown that he left the State, but there were witnesses who testified that such was the supposition.  The officer then returned home without the witness.  The case, while set for trial on Monday of the following week, was not actually tried until Wednesday.  The court had, previously to the trial, issued an attachment for the witness. The officer to whom this attachment was delivered testified that he inquired all round the witness's home, which was in still another county, and among the people who knew him, and that he heard that the witness was in Florida.  At the time the officer first mentioned above went to Decatur county he was accompanied by a person who was a former employer of the witness and who had a warrant for his arrest, but this warrant had not been placed in the hands of the officer.  The officer who went to Decatur county had no attachment or other process against the witness.  The other officer, to whom the attachment was delivered, seems not to have gone to Decatur county at all, but to have simply made inquiry about the former home of the witness in another county.  It would seem that due diligence would have required that the officer with the court's process should have gone to the place where the witness was last seen, that is, in Decatur county.  So far as the record discloses, the witness may have returned from Florida, if he ever went into that State, and have been at work in Decatur county on the day that the trial was had.  We do not think that the evidence was sufficient to establish that the witness was inaccessible within the meaning of the law.  In *Taylor, v. State, 126 Ga. 557*, it was held that the inaccessibility of a witness was not established by merely showing that the witness was absent from the county, and when last heard from was living within the limits of the State.  See also *Augusta & Summerville R. Co. v. Randall, 85 Ga. 297 (3)*; *Gunn v. Wades, 65 Ga. 537*.

2. Error is assigned upon the following extract from the charge of the court: "If you can not so reconcile it, then it is your privilege to believe those you think most worthy of belief and whose opportunity has been best to know the facts to which they have testified, and whom you believe to have the least motive to speak falsely." The objection urged to this charge is the use of the word "privilege;" the contention being that the jury should be instructed that, under the circumstances stated, it was their duty to believe those witnesses. The sentence above quoted was the conclusion of that portion of the charge of the judge relating to the credibility of witnesses, and when it is read in connection with the context, the use of the word "privilege" was not calculated to create upon the mind of the jury the impression that it was a matter simply within their choice, but rather to impress upon them that it was a duty to believe the witnesses who were in the position described. While it would have been better if the word "duty" had been used instead of the word "privilege," we do not think that the use of the word "privilege" was prejudicial to any right of the accused.

Complaint is made that the judge charged the jury that the presumption of innocence remained with the accused throughout the entire trial, "unless the State has, at some time in the course of the trial, legally established his guilt to the satisfaction of the jury and to a moral and reasonable certainty." The objection to this portion of the charge was that proof to a moral and reasonable certainty was not proof beyond a reasonable doubt. Immediately following the sentence from which the above extract is made, the court instructed the jury that absolute and mathematical certainty was not required, but that it was "incumbent on the State to establish his guilt to a moral and reasonable certainty and beyond a reasonable doubt." In *Bone* v. *State,* 102 *Ga.* 387, the majority of the court held that the expression "moral and reasonable certainty" was the equivalent of "beyond a reasonable doubt." The writer dissented from this view, and he is still of the opinion as expressed at that time, but, without reference to this, the use of the words, "moral and reasonable certainty," in the extract from the charge upon which error is assigned, could not have misled the jury, even if these words be given the meaning contended for in the dissenting opinion in the *Bone* case. In the sentence following this, the court gave instruction about which there could be no difference of

opinion, and the jury, as intelligent persons, must have known that in the preceding sentence the judge used the expression "moral and reasonable certainty" in the sense of "proof beyond a reasonable doubt."

Error is also assigned upon two extracts from the charge laying down the rule that if there is an interval between the assault or provocation and the homicide, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to revenge and be punished as murder. The objection made to this charge is that it is inapplicable to the facts of the case. The question as to whether a sufficient interval elapsed for the voice of reason and humanity to be heard is a matter to be determined by the jury in each case, and it was not improper for the judge to submit this question to the jury. While, according to the testimony offered by the accused, the assault of the deceased upon the accused, and the killing of the deceased by the accused, was a transaction of short duration, it was still a matter to be determined by the jury. We do not think there was any error in charging the principle of law contained in the extracts of the charge upon which error is assigned.

The remaining extracts from the charge upon which error is assigned were not erroneous for any reason assigned, and, when taken in connection with the entire charge, were not calculated to prejudice the accused in any way.

3. While the accused was making his statement he referred to things which were merely matters of hearsay, and the judge interrupted him and told him that he must not state that which was hearsay. A few moments thereafter, however, the judge stated to the accused that he would be permitted to state anything he desired, and after this the accused continued his statement, which embraced some things which were purely hearsay. It does not appear that on account of the conduct of the judge the accused failed to state anything which he would have stated except for the interruption. In fact, when the statement is read, there is an indication that on the second remark of the judge, which allowed the accused to state any matter which he wished, he referred to the very matter which he was about to state when the judge thus interrupted him. This incident of the trial does not afford a sufficient reason for reversing the judgment.

4. Counsel for the accused propounded to a witness a question as

to whether certain cuts, which appeared in the coat of the accused, which it was claimed he wore on the day of the homicide, could have been made by the deceased at the time of the difficulty resulting in the homicide. It appeared that the witness would have answered that they could have been so made. Counsel for the State objected to the question and answer, on the ground that this would be a mere conclusion of the witness; and the court sustained the objection, and this ruling is assigned as error. There was no error in this ruling. *Mayor* v. *Wood,* 114 *Ga.* 370; *Thomas* v. *State,* 122 *Ga.* 151, and cases cited.

5. One ground of the motion for a new trial is that the court erred in receiving the verdict and having the same published in the absence of the clerk. It appears that when the jury came into court the judge, the solicitor-general, the accused, and his counsel were all present, but the clerk was absent. The attention of the judge was not called to this fact. The verdict was received by the solicitor-general and published, and the jury were discharged. The judge remained upon the bench until the clerk came, in a few moments after the verdict had been received. The indictment, with the verdict thereon, was kept in the possession of the solicitor-general, in the presence of the judge, the accused, and his counsel, until the clerk returned, and was handed by him to the clerk upon his return. The judge certifies that the verdict as handed to the clerk by the solicitor was unaltered. We see nothing in this to require a reversal of the judgment. If the judge, the jury, the accused, and his counsel are all in court when the verdict is received and published, the mere absence of a ministerial officer of the court, whose duty it is to take the paper upon which the verdict is rendered and thereafter transcribe the verdict upon the minutes, does not vitiate the verdict. The point raised in this ground of the motion for a new trial is novel. No authority upon either side of the question appears upon any of the briefs. So far as our information and investigation goes, such a question seems never to have been raised before. It would certainly be very disastrous to judicial proceedings if it should be held that the absence of the clerk from the court-room during the progress of the case would vitiate the action of the court. We see no reason why the judge himself, or any officer of the court, under the direction of the judge, may not, in the presence of the accused and his counsel, receive and

publish a verdict.   The duties of the clerk in reference to the verdict do not relate to its reception and publication, but merely to its proper record after it has been received and published.

6. The evidence was conflicting.   According to the testimony of the witnesses for the State, an unprovoked case of murder was clearly made out.   The evidence for the accused might have authorized a verdict for manslaughter, or even an acquittal.   The credibility of the witnesses was a matter for the jury.   The trial judge has approved the verdict, and we will not reverse his judgment refusing to grant a new trial.

*Judgment affirmed.   All the Justices concur.*