SHEPPARD *v.* THE STATE.

No. 6630.   November 16, 1928.

*W. B. Knight* and *Charles J. Graham,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, J. W. LeCraw,* and *E. A. Stephens,* contra.

HILL, J. (After stating the foregoing facts.) The evidence authorized the verdict, and the court below did not err in over-ruling the general grounds of the motion for new trial.

■ Ground 1 of the amendment to the motion complains that the trial judge erred for the reason that during the entire trial, beginning with the impaneling of the jury until the testimony had been concluded, and until the judge's charge had been finished, the defendant was surrounded and kept under close guard by two or three bailiffs or deputies, who sat in close proximity to the defendant, thereby separating him from his counsel, the defendant sitting behind one of the court-room tables, while his counsel were in front of the table during the progress of the trial, thereby "as movant contends, handicapping counsel and defendant in consultations with their client during the progress of the trial, all of

which was done under orders of the court, but without complaint to the court, nor was counsel prevented by the court in consulting with their client; however, movant contends that said conduct resulted in damage, injury, and prejudice in the minds of the jurors, thereby denying defendant a fair and impartial trial." This ground is without merit. It is not alleged that counsel were prevented from consulting with their client at any time during the progress of the trial, and it does not appear that counsel made any complaint to the court at any time to the effect that they were not permitted to sit close enough to the defendant in order to consult with him, or he with them; or that the defendant or counsel was deprived of any right to which they were entitled under the law. Therefore it does not appear that any harm was done to the defendant on account of the arrangement of the table or chairs in the court-room.

■ Special ground 2 of the motion complains that the judge, while counsel for the defendant and the State were engaged ·in argument to the jury, vacáted his seat on the bench, going to the door to his private chambers, which was slightly without the main court-room, "and sitting probably out of sight of the jury and defendant's counsel during the progress of the argument, but at no time out of the presence of the jury or hearing of counsel, but was accessible at all times to any objection counsel might want to make to the court; that counsel for the State, during the absence of the court from his sitting on the bench as thus stated, argued to the jury, in substance, ' that imprisonment with its improved conditions, including good clothes, outdoor games, movies, and other various entertainment, was no punishment in effect, in that some persons fare better in prison than with their liberty;' but no objection was made to the court where he was sitting, as above stated; all of which movant contends was prejudicial to defendant in obtaining a fair and impartial trial." It does not appear that any motion for a mistrial was made, or any complaint urged against the argument of the solicitor-general, or that any ruling by the court was made. In these circumstances it was not error to refuse a new trial on this ground. See *O'Shields* v. *State*, 81 *Ga.* 301 (6 S. E. 426) ; *Pritchett* v. *State*, 92 *Ga.* 65 (2) (18 S. E. 536) ; *Horne* v. *Rogers*, 110 *Ga.* 362 (5), 370 (35 S. E. 715). In the case last cited it was said: "The mere absence of the

judge during the progress of the trial, when no objection is made, will not necessarily require the granting of a new trial, when the absence is only for a few moments and for a necessary purpose; and in order for such absence to become reversible error, it must appear not only that objection was made to the judge's failure to suspend the trial, but that the absence of the judge resulted in some harm to the losing party."

■ Complaint is made in the third special ground of the motion, that the court erred in allowing the written testimony of Vena Black, one of the State's witnesses, as delivered on a previous trial of the case, to be introduced in evidence over the protest and objection of defendant's counsel, in that said deposition was incompetent and inadmissible, for the reason that it had not been shown by the State that the witness was inaccessible, or that "she was dead, or, if living, that she was beyond the jurisdiction of the court, without the boundary of the State or county wherein the trial was being held." In *Robinson* v. *State,* 128 *Ga.* 254 (57 S. E. 315), it was held that "Proof of inability to find a witness after diligent search may, in some circumstances, be sufficient to establish that such witness is inaccessible, within the meaning of the Penal Code [1895], § 1001, and be a sufficient reason for allowing the testimony of such witness, rendered on a former trial, to be read, at the instance of the accused, in a criminal case. The sufficiency of the search is a matter left to the discretion of the trial judge, whose judgment will not be reversed, unless a manifest abuse of discretion appears." As to the inaccessibility of the witness in question, the State offered the following testimony of an officer, T. J. Davis: "I believe I did lock up Vena Black and hold her for a witness. . . I was afraid she would leave here. She has gone now. She was here at the former trial. She was the woman who testified under the name of Vena Black. As to whether I have made any effort to find her for the purpose of having her here as a witness in this case, I have done everything I could do to find her. I knew she lived with her brother, her uncle. I went to his house. I saw him. I did not succeed in getting any information from him as to her whereabouts. I went to see her grandmother. They did not know anything about her. I also went to her aunt that lived about Griffin. They did not know anything about her and had not heard from her, any of them,

since last summer. I think her grandmother is here." Mrs. Alice Davis testified: "I do not know where Vena Black is. The last time I saw her was last spring on Sunday morning, when she left my house and told me she was going. She lived with me. She stayed at my house when she came away from down yonder. She left my house. I have never heard from that girl yet. I do not know where she is now. A lot of people have been down there inquiring where she was." C. A. Fowler testified: "As to what effort I have made to find Vena Black for the solicitor-general, I went out to her grandmother's, and I have asked everybody—I don't know how many—everybody I have seen I thought would know anything about where she was. When I knew her about in Atlanta was when she lived on Marietta street. I have never seen her since the trial before. I learned that she had been out at her grandmother's away last spring. That is the last that I heard of her in any way. I made an effort to find her on Marietta street and at the stock-yard, that general section. I asked around Crooked Road at a store. I asked two or three if they knew anything about her. I made a search for her as recently as Monday, I believe, or Tuesday, of this week." Dovie Braswell testified: "Vena Black and I are sisters. I don't know where she is now. The last time I heard from her she was in Atlanta; that was about seven or eight months ago. She did not make any statement to me as to where she intended to go or what she intended to do. The last time I saw her she was out on Crooked Road. That is right off of Howell Mill Road. She had been living with me before the last time I saw her. Her grandmother is living, and she stayed out there some. She did not live anywhere else except with me and her grandmother."

The question of the inacessibility of a witness is one for the determination of the trial court in the exercise of a sound discretion; and under the evidence as set out above, the trial judge did not abuse his discretion in holding that the witness, Vena Black, was inaccessible, and in allowing her testimony delivered on a former trial to be read. See *Estill* v. *Citizens & Southern Bank,* 153 *Ga.* 618 (6) (113 S. E. 552) ; Penal Code (1910), § 1027.

■ Ground 4 of the motion for new trial is as follows: "The trial judge erred, it is respectfully submitted as movant contends, in allowing the written testimony of said absent witness, Vena

Black, as delivered on a former trial of the same case, to be introduced in evidence against the protest of defendant's counsel, in that defendant's counsel had not had an opportunity at the former trial to investigate the case and to become acquainted with the facts, so that defendant's counsel could intelligently interrogate this witness on cross-examination; said deposition being tantamount to evidence against the defendant without giving defendant's counsel an opportunity to cross-examine the witness." A ground of a motion for new trial should be complete within itself. The above ground of the motion for new trial does not purport to set out in exact language, or in substance, what the testimony objected to is; and therefore, it is impossible to determine from this ground whether the testimony objected to was inadmissible for any reason assigned, or whether it was harmful to the defendant.

■ Error is assigned because the court gave the following instruction to the jury: "Our law provides that a witness may be impeached by disproving the facts testified to by him, or by contradictory statements previously made by him as to matters relevant to his testimony and to the case, or by proof of general bad character. If a witness is impeached by either of the modes mentioned, you should disregard from your consideration his testimony in its entirety, unless it is corroborated by other competent and credible testimony which you believe, or is corroborated by the circumstances of the case. When a witness has been impeached in either or both of the ways just stated to you, the testimony of that witness ought to be rejected entirely, unless it is corroborated as to material matters by other credible and competent evidence which you believe, or is corroborated as to material matters by the facts and circumstances in the case which you believe." The criticism of this charge is that it "was erroneous and an unsound principle of law, and that said court erred in charging the jury such to be law." In *Powell* v. *State,* 101 *Ga.* 9 (5) (29 S. E. 309, 65 Am. St. R. 277), this court held: "It being the exclusive province of the jury to determine the credibility of all witnesses, when an effort is made by any of the methods pointed out by law to impeach a witness, the jury become the triors of the credibility, respectively, of the witness sought to be impeached, and of the witness or witnesses by whose testimony the

impeachment is attempted; and, accordingly, they have the right, under all the attendant circumstances and conditions, to determine whether credit shall be given to the witness whose credibility has been attacked, or to the witness or witnesses by whose testimony such attack is made, and thereupon decide whether the witness has or has not been impeached. . . Under the previous rulings of this court, if a witness has been impeached, it is the duty of the jury to disregard his testimony, unless corroborated in material particulars." In delivering the opinion of the court Mr. Justice Little said: "Therefore, when the credibility of a witness is attacked as by an effort to impeach him in any of the methods pointed out by law, the jury then become the triors of the credibility of the witness sought to be impeached, and of the witness or witnesses by whose testimony the attack is made; they are to weigh the opposing testimony, and at last say whether they will discredit the testimony of the witness sought to be impeached, and consequently give credit to that introduced by way of impeachment, or whether they will discredit the testimony introduced for the purpose of impeachment and credit that of the witness attacked; in a word, it is the exclusive province of the jury, under all the attendant circumstances and conditions, to determine whether a witness has or has not been impeached." Citing *McPherson* v. *State*, 22 *Ga.* 479; *Strozier* v. *Carroll*, 31 *Ga.* 557; *W. & A. R.* v. *Carlton*, 28 *Ga.* 180; *Fish* v. *Van Winkle*, 34 *Ga.* 339; *Shorter* v. *Marshall*, 49 *Ga.* 31; *Williams* v. *State*, 69 *Ga.* 14; *Franklin* v. *State*, 69 *Ga.* 37 (47 Am. R. 748); *Ford* v. *State*, 70 *Ga.* 722; *Saul* v. *Buck*, 72 *Ga.* 254; *Hodgkins* v. *State*, 89 *Ga.* 761 (15 S. E. 695); *Lewis* v. *State*, 91 *Ga.* 168 (16 S. E. 986); *McTyier* v. *State*, 91 *Ga.* 255 (18 S. E. 140); *Rome R. Co.* v. *Barnett*, 94 *Ga.* 447 (20 S. E. 355); *Central R. Co.* v. *Phinazee*, 93 *Ga.* 488 (21 S. E. 66); *Duncan* v. *State*, 97 *Ga.* 180 (25 S. E. 182). "Some confusion seems to have arisen in the application of this doctrine, by reason of a failure, in applying it, to keep in mind the distinction between the impeachment of a witness and the attempt to impeach, and as to the duty of the jury in dealing with the testimony of an impeached witness, and that of a witness whose credibility has been attacked by way of impeachment, the terms 'impeachment' and 'attack on the credibility' of a witness by way of impeachment being treated as synonymous. It is a solecism to say

that a witness has been successfully impeached. It is altogether proper to say that an attempt to impeach the credibility of a witness has proved successful. Impeachment, in evidence, is ' an allegation, supported by proof, that a witness who has been examined is unworthy of credit. ' 1 Bouvier's Law Dictionary, 774; to same effect see Black's Law Dictionary, 593. It is the allegation, supported by proof." The criticism of the foregoing charge raises only the question whether the charge was "an unsound principle of law." We are of the opinion that this criticism is without merit. See *Owens* v. *State*, 120 *Ga.* 209 (2) (47 S. E. 545).

■ Ground 6 of the motion complains that the court erred in charging the jury: "If you do not believe beyond a reasonable doubt that the defendant is guilty of murder as charged in the bill of indictment, it would be your duty to acquit. Then it would be your duty to go into consideration of the evidence, giving the defendant's statement just such weight and credit as it is entitled to receive, on the question of whether the defendant is guilty of the lesser offense of voluntary manslaughter." It is insisted that the foregoing charge does not state a sound proposition of law, and was injurious and prejudicial to the defendant, in that said language was calculated to convey to the minds of the jury that it was their duty to exclude and disregard the statement of the defendant in its deliberations as to the defendant's guilt of murder, but should the jury have a reasonable doubt as to the defendant's guilt of murder, then the jury should acquit the defendant and find him not guilty; that the charge conveyed the impression and idea to the jury that they were only to consider the defendant's statement as testimony in his behalf in their consideration as to the defendant's guilt of manslaughter, and that consequently the charge was erroneous and prejudicial to the defendant. Standing alone, this charge of the court might be open to criticism. In the general charge the court instructed the jury that "in all criminal trials the defendant is permitted to make to the court and jury just such statement in his own behalf as he may think proper. It is not under oath, and you should give it such force and effect only as you think it is entitled to receive. You may believe it in whole or in part, or you may believe it in preference to the sworn testimony." The court charged also: "So if, after considering all the facts and circumstances in the case, under all the evidence in the

case, your minds are wavering, unsettled, and unsatisfied, that is the doubt of the law, and you should acquit; but if that doubt does not exist from a consideration of the evidence and the defendant's statement, you should convict." In view of the entire charge of the court we are of the opinion that the charge complained of is not subject to the criticism made.

■ Ground 7 of the motion is but an amplification of the general grounds. We are of the opinion that the verdict was authorized by the evidence, and that the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., concurring specially. I concur in the judgment of affirmance, but I do not adopt the rulings announced in the first and second headnotes as my concept of the correct rule of law in the circumstances referred to therein.