## 30065. BROOKS v. THE STATE.

DECIDED JUNE 8, 1943.
ADHERED TO ON REHEARING JULY 21, 1943.

*William Hall, Shackelford & Shackelford,* for plaintiff in error.

*J. T. Murray, solicitor-general pro tem., G. W. Westmoreland,* contra.

GARDNER, J. On an indictment charging the offense of assault with intent to murder the defendant was tried and convicted of the offense of illegally shooting at another. He filed a motion for new trial, which was duly amended by adding nine special grounds. The court overruled the motion, and the defendant excepted.

Briefly, the evidence shows that H. B. Gober, the prosecutor, (shot by the defendant), and the defendant had not been on good terms for several years because of a difficulty concerning a well-bucket which the prosecutor accused the defendant of taking. The State's evidence shows that on the day of the shooting the prosecutor drove by a store and gasoline filling station. The defendant was on the inside. The prosecutor did not know the defendant was in the store. The defendant called to the prosecutor, and again brought up the question of the bucket. Heated words followed between them. As the defendant came out of the store to the front, and the prosecutor went into the store, they met near the door of the store, on the outside. The defendant said to the prosecutor: "You are just a ———— damn liar if you say I got your well-bucket." The prosecutor said: "Don't call me that," started toward defendant, and hit him on the head with his fist. After the defendant had been hit he said to the prosecutor: "You son of a bitch, I will shoot you." The defendant took his pistol from his pocket and began shooting toward the prosecutor, hitting him twice. Such, briefly, is the State's testimony. The defendant's contention was that the prosecutor made the first opprobrious remarks to the defendant, and, in a threatening manner, began advancing toward him with a pocket knife, a weapon likely to produce death; that defendant remonstrated with prosecutor in an effort to get him to stop advancing with the knife; that the prosecutor was not restrained, and defendant shot the prosecutor in self defense. Defendant further contended that prosecutor had on numerous occasions and in crowds, accused him of stealing a well-bucket; that when he would meet defendant he would call defendant a well-bucket; all of which the prosecutor denied.

■ Under the general grounds and special grounds 1, 2, 6, and 7 of the motion, the defendant contends that the evidence did not support a verdict of shooting at another; that the only issue involved was guilty or not guilty of the offense of assault with intent to murder and that therefore the court should not have submitted for the consideration of the jury the offense of illegally shooting at another. The jury, after considering the case "some time," returned a verdict of guilty of the offense of shooting at another, and fixed the punishment at one year in the penitentiary, with a recommendation that the defendant be punished as for a misde-

meanor. The court disregarded the recommendation, and sentenced him to serve one year in the penitentiary. Able counsel argue that this was a compromise verdict, and that the jury would not have convicted the defendant had they not believed that the judge would have imposed a fine. This is pure speculation, and under the facts of this case presents a question that is not within the scope of the authority of this court to determine. So far as the evidence is concerned, it would have authorized a verdict of assault with intent to murder, as conceded by counsel for the defendant in error. In this we agree, but we are unable to agree with the earnest argument that the evidence is insufficient to support the lesser offense which the jury found the defendant guilty of, that is, shooting at another.

The record shows that the jury was amply authorized to return a verdict for the offense of shooting at another on the theory that the defendant was actuated, not by malice, but by a sudden heat of passion, supposed to be irresistible. The long ill-feeling which existed between the two parties, and the previous difficulties which they had had were sufficient, under the law, for the jury to conclude that the shooting was prompted by passion instead of malice, and that had the prosecutor died, the defendant would have been guilty of voluntary manslaughter. The learned judge charged fully the law on every phase of the case. As to whether the judge should have followed the recommendation of the jury, this was within his discretion, and the record does not show that he abused this discretion. As to that contention we have no authorized concern. The court did not err in overruling the motion for new trial in so far as the general grounds and special grounds 1, 2, 6, and 7 of the motion are concerned.

■ Special ground 3: The doctor who treated the prosecutor for pistol wounds testified that he removed a pistol bullet from the arm of the prosecutor. He described another wound as coming through the left shoulder from the front and passing out from the shoulder blade on the back about three inches from the heart. Over objection the court allowed the doctor to testify: "The weapon used in producing these wounds would likely produce death." The defendant contends that the admission of this testimony was error. The character of the weapon used may be determined from the character of the wound or other circumstances. *Paschal* v.

*State,* 125 *Ga.* 279 (54 S. E. 172); *Jackson* v. *State,* 56 *Ga. App.* 374 (192 S. E. 633). Compare *Kennedy* v. *State,* 68 *Ga. App.* 852 (24 S. E. 2d, 321). The bullet which the doctor removed was introduced in evidence. The defendant admitted that he shot the prosecutor with a pistol. This ground is without merit.

■ Ground 4 complains that the court permitted the prosecutor to testify over objections of defendant as follows: "By reason of the wound inflicted on me that day by Mr. Brooks I was disabled twelve months. But I worked some with my left hand. I could not work any with my right for a period of twelve months. No, sir, I have not yet recovered from those injuries." The objections argued against the admission of this testimony are, that the jury were thereby prejudiced against the accused and were asked to find the defendant guilty because the prosecutor had suffered and would still suffer from the injuries regardless of whether the defendant was justified in inflicting the wounds or not, and that the admission of such testimony was hurtful, and not material to any issue involved in the case. In the trial of a case of assault with intent to murder, the nature and extent of the wound is admissible for the purpose of illustrating whether or not the attack was made with intent to unlawfully take human life. *Reece* v. *State,* 60 *Ga. App.* 195 (3 S. E. 2d, 229). And such evidence is also admissible for the purpose of showing the character of the weapon used. *Nelson* v. *State,* 4 *Ga. App.* 223 (160 S. E. 1072).

■ Ground 5: The defendant was tried October 6, 1942, at the September adjourned term of Madison superior court. When the case was called, both sides announced ready. Issue was joined and a jury chosen, empanneled and sworn to try the issue formed on the indictment for assault with intent to murder. The State introduced evidence, made out its case and rested. The defendant then proceeded to introduce evidence. During the progress of the defense, it appeared to the court for the first time that Hoyt Dickson, a witness for the defendant, who testified in a former trial of the case, was not present, although he had been previously subpœnaed. The record does not reveal whether the witness had been subpœnaed again since his appearance as a witness in the former trial. It appears from the record that the absent witness was in the military service of the United States Government at the time of the trial, and had been for more than a year at the

time of the former trial. The absent witness was stationed at a camp near Valdosta, and had attended the regular September term of Madison Superior Court for the purpose of appearing as a witness for the defendant in the same case. It does not appear from the record that any effort was made by the defendant or his counsel to have the witness present at the trial on October 6, 1942, at the September adjourned term. It does not appear that when the case was called for trial, and announcement of ready was made, any motion for continuance or postponement of the trial was made to the trial court on account of the absence of the witness. It does appear that the first knowledge the trial court had that the witness was absent and that the record of his testimony on a former trial would be offered, was after the State had made out its case and rested. Counsel for the defendant stated that they had been but recently employed in the case, and that the defendant, being in jail by reason of his bond having been forfeited, insisted on a trial rather than remain in jail, and, assuming that the witnesses were all present, they had announced ready. Under these circumstances, on objection from State's counsel, the court refused to allow the introduction of the record of the testimony of the absent witness on a former trial of the case. It is well established that whether or not a witness is inaccessible to the court is left to the sound discretion of the trial court, and his ruling will not be disturbed unless manifestly abused. In *Sheppard* v. *State,* 167 *Ga.* 326 (3) (145 S. E. 654), the court held: "The question of the inaccessibility of a witness is one for determination by the trial court in the exercise of a sound discretion." See *Robinson* v. *State,* 128 *Ga.* 254 (57 S. E. 315); *Estill* v. *Citizens & Southern Bank,* 153 *Ga.* 618 (6-b) (113 S. E. 552); *Goodwin* v. *State,* 49 *Ga. App.* 223 (174 S. E. 742), and cit.; *Norris* v. *State,* 58 *Ga. App.* 399 (198 S. E. 714).

We may concede that a witness in the military service of the United States Government is inaccessible to the State courts in so far as being forced to appear as a witness is concerned. At the same time it is a matter of common knowledge that the military authorities and the State court officials are very co-operative in carrying on both units of government. No doubt had due diligence been exercised in order to obtain the presence of the witness, he would have been present. Indeed the record discloses that he

was present in answer to a subpœna at the regular September term of the court for the purpose of testifying in this particular case. No doubt if the matter had been called to the attention of the trial judge, he would have exercised all the discretion and power vested in him to use the processes and good offices of the court to have the witness present to testify. Failing in this, then no doubt he would have permitted the admission of the testimony of the witness given on the former trial. But in the exercise of his sound discretion he was justified, under the law, in excluding such testimony. There is no merit in this contention.

■ Grounds 8 and 9 assign error because the court allegedly did not charge, in proper sequence and fully, the contentions of the defendant as supported by the evidence. Taking the charge as a whole, as this court is bound to do, there appears no reversible error. *Boram* v. *Thweatt,* 45 *Ga.* 94; *Guerin* v. *Danforth,* 45 *Ga.* 493; *Garmany* v. *Lawton,* 124 *Ga.* 876 (53 S. E. 669, 110 Am. St. R. 207). These grounds do not allege error as to the correctness of the charge which the court gave, however, but contend that the court should have gone more into detail as to the contentions of the defendant and should have done so in proper sequence. We have examined the charge carefully in the light of the exceptions contained in these grounds, and find no merit in them. The charge as a whole is fair and complete, and instructed the jury as to the issues involved under the facts of this case. The assignments of error on these grounds are not meritorious.

The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

ON REHEARING.

GARDNER, J. This case was set for argument on April 5, 1943. On April 1 the attorney for the plaintiff in error notified the court that he had been sick for five or six weeks and that he had prepared a "skeleton brief," which he was forwarding to the court. He asked for "a few days time in which to complete" his brief and argument. On April 2nd the clerk of this court wrote counsel that in practically all cases supplementary briefs were filed without special permission of the court, and acknowledged receipt of the original brief. The clerk suggested that a supplementary brief be forwarded within ten days. On April 9th the brother of Hon. Thomas J. Shackelford wrote the clerk, acknowledging receipt of

the letter of April 2nd and requesting that the clerk call to the court's attention the fact that Hon. Thomas J. Shackelford was sick with pneumonia, and requested an extention of time to file "a supplementary brief." On April 10th the clerk wrote to Hon. F. C. Shackelford as follows: "I have to-day presented your letter of the 9th instant to the court, and am instructed to advise you that two weeks from this date is allowed in which to file supplemental brief in the above case. If a longer time than this should be necessary, you will please notify me, and I will take the matter up with the court again."

Hearing nothing further from any one concerning the case, the court on June 8 rendered its opinion. This was practically five weeks from the time within which the court was to await the filing of a supplementary brief. On June 17 counsel filed a motion for rehearing, in which he stated that "he was not permitted, on request, to file a brief," that the only recourse he had was to file a motion for rehearing. We mention the letters above merely to explain the situation.

The main argument on the motion for rehearing is that the court erred in not admitting the testimony of Hoyt Dickson, who testified in a former trial. The testimony of Hoyt Dickson in the former trial was briefed and agreed upon as correct, and was approved by the court. Upon a careful review of the case we see no reason to change our original opinion. It does not appear from the record that a motion for a continuance of the case was ever made. It is true that after an announcement of ready had been made and issue had been joined on the indictment, and the State had rested its case, the question regarding the testimony of Hoyt Dickson given on the former trial and his absence at the hearing came into question. Then it was that counsel offered the testimony of Hoyt Dickson given on the former trial. The solicitor general objected to it on the ground that the inaccessibility of the witness had not been established. The court sustained the objection and refused to admit the evidence given at the former trial.

The record reveals that the father of Hoyt Dickson testified: "Hoyt Dickson is my son. He is about 24 years old. My son Hoyt went to Atlanta and volunteered for the army. He has been in the army since the 7th day of last August a year ago. I have not been down there lately to see him, but he was at home the 7th

day of September for court and they put court off here in September; *he came home for court*. [Italics ours]. He is at Valdosta where there is a camp. He is under military regulations there and I wouldn't think he could leave without permission. I couldn't say whether he has been shifted from there or not; it has been a couple of weeks since I heard from him. I do not know whether he is still there or has been shifted." Whereupon the following colloquy took place: "Mr. Shackelford [counsel for defendant]: We think in all fairness to the defendant we ought to be able to read the testimony of this witness, Mr. Dickson. He is a very important witness and we have no way of getting him here.

"Judge Murray [solicitor-general]: We object to it. They have not shown this witness is not accessible. They have shown he is in the state and have shown he voluntarily came here at the regular September term expecting to attend court. They have not shown there has been an effort made for him to attend this term of court, and I think they have fallen short of the rules.

"Mr. Shackelford: I didn't know he was in the army.

"Mr. Hall: Mr. Shackelford and I were only recently employed, and it was only this morning we learned this witness was in the army.

"Mr. Shackelford: We would like to have time to get him here.

"The Court: It would take too long.

"Mr. Shackelford: Your honor will consider this as offered?"

It will be observed that this colloquy took place after the State had rested. It was the first time the court was informed as to the whereabouts of the absent witness. No effort at all had been made to locate the witness, or to inform the court that the rejected testimony would be offered. The argument of able counsel for plaintiff in error within itself, we think, is sufficient to show that the court did not abuse its discretion in denying the admission of the testimony. He states: "When it was brought to the attention of the court that the witness was absent, and in the military service, and that his testimony in the same case was offered, it was the duty of the court either to give him time, 48 hours, to get witness there, if he could be brought there, or else to allow this witness's testimony read to the jury." If counsel could have ascertained within 48 hours whether the witness was accessible after the State had rested its case, he could have done so before he an-

nounceu ready. Moreover, the record shows that the witness was in attendance upon the court in September, a month before the trial, and the evidence reveals that he *came home for court.* And the evidence further reveals that he was then in the army and had been for a year. If he was not inaccessible in September, the record reveals nothing to show that he was inaccessible the following month of October.

*Judgment adhered to. Broyles, C. J., and MacIntyre, J., concur.*